[No. A071528. First Dist., Div. Three. Feb. 23, 1998.]

APPLICATION GROUP, INC., et al., Plaintiffs and Respondents, v.
HUNTER GROUP, INC., Defendant and Appellant.

COUNSEL

Thelen, Marrin, Johnson & Bridges, Charles S. Birenbaum and Thomas M. McInerey for Defendant and Appellant.

Stephen E. Taylor, Jan J. Klohonatz and Paul Beach for Plaintiffs and Respondents.

OPINION

PHELAN, P. J.—The Hunter Group, Inc. (Hunter or appellant), timely appeals from a judgment by which the San Francisco Superior Court declared that covenants not to compete contained in the employment contracts of Hunter consultants who do not reside in California are illegal in the circumstances of this case, and cannot be enforced against respondents The Application Group, Inc. (AGI), a California-based corporation, and Dianne Pike (Pike), a resident of Maryland and former Hunter consultant who was recruited to work for AGI in California in 1992. The trial court's judgment

was based on sections 16600 and 17200 of the California Business and Professions Code.[1]

On appeal, Hunter contends: (1) There is no "actual controversy" between or among the parties and, therefore, certain of AGI's and Pike's claims for declaratory and injunctive relief are not justiciable; (2) the enforceability of the relevant covenants not to compete must be determined under the law of Maryland, not California; and (3) under Maryland law, the covenants not to compete are lawful and enforceable.

We conclude the trial court did not abuse its discretion in determining that AGI's claims are justiciable. We further conclude, in agreement with the trial court, that California law may be applied to determine the enforceability of a covenant not to compete, in an employment agreement between an employee who is not a resident of California and an employer whose business is based outside of California, when a California-based employer seeks to recruit or hire the nonresident for employment in California. However, we agree with Hunter that the trial court abused its discretion by granting declaratory relief in favor of Pike, whose individual claims became moot during the pendency of the proceedings below. Accordingly, we vacate those portions of the judgment relating to Pike's individual claims for relief. As thus modified, the judgment will be affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Parties.*

Hunter is a privately held Maryland corporation, with its headquarters in Maryland. It provides computer consulting services for businesses that use human resources software, including software manufactured by the California-based company, PeopleSoft, Inc. Hunter maintains a branch office in San Francisco, California, as well as in Georgia, Illinois, New York, and Massachusetts. Hunter frequently competes with AGI and other California-based companies for consulting projects. Although its business is centered primarily in the eastern United States, Hunter has provided and continues to provide consulting services to customers in California.

Between October 1992 and July 1993, Hunter employed six computer consultants and one administrative assistant who were California residents.

---

[1] All statutory references are to the Business and Professions Code unless otherwise indicated.

In relevant part, section 16600 provides: "[E]very contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Section 17200 defines "unfair competition." It ". . . include[s] any unlawful, unfair or fraudulent business act or practice . . . ." (*Ibid.*)

None of these employees had a covenant not to compete in their employment agreements. However, all of Hunter's employees who reside outside of California and work primarily in other states do so under covenants not to compete, which prevent them from working for any of Hunter's competitors for up to one year from termination unless the employee is laid off for economic reasons.

Between August 1993 and May 1994, Hunter performed no billable work in California.[2] However, in 1994, Hunter again attempted to enter the California computer consulting market. By late 1994, Hunter had ninety employees nationwide, only two of whom resided in California, and five California-based customers. At this time, too, the employment agreements of all of Hunter's non-California resident employees contained covenants not to compete, but those of the two California residents did not. To increase its capacity in California, Hunter assigned temporary projects in California to employees from other states.

AGI is a California corporation, with its headquarters in San Francisco, California. It is a subsidiary of Automatic Data Processing, a publicly held corporation, and maintains offices in Georgia, Illinois, and New Jersey. Like Hunter, AGI provides its customers with the services of trained, specialized computer consultants who frequently travel substantial distances to work directly at the customer's premises. Sometimes these consultants travel from their home state to the customer's location for a project of extended duration. Competition for the limited number of qualified computer consultants among prospective employers—including Hunter and AGI—is "stiff." As of the end of 1994, AGI employed 106 consultants nationwide, 30 of them in California.

AGI and Hunter are structured differently and manage their employees in different ways. AGI conducts both its in-state and out-of-state business from its San Francisco headquarters. AGI's employees are treated as California employees; all AGI employees are residents of, work in, or are managed from California, and, with one exception, have employment agreements governed by California law. Unlike Hunter, AGI does not vary the terms of its employment agreements depending upon the employee's state of residence. AGI does not require a covenant forbidding employment with its competitors.

Pike is a consultant who is skilled in computerized human resources management systems, the field in which Hunter and AGI compete. She has

---

[2]Between July 1991 and the end of 1993, 14 Hunter employees performed 12,250 hours of billable service for its California-based customers. Two of these employees, who were responsible for 3 percent of Hunter's billings in California during the same period, worked under covenants not to compete.

been a resident of Maryland since 1963, and was hired by Hunter in 1991. During the 16 months she was employed by Hunter, Pike worked at Hunter's Baltimore offices and at various customer sites in Arizona, Colorado, Massachusetts, and New York. It is undisputed that Pike never set foot in California, even for pleasure, during the time she was employed by Hunter.

Hunter objected to AGI's recruitment and hiring of Pike, and demanded she withdraw her resignation and continue service under her employment contract. When Pike refused, Hunter sued her in the Circuit Court for Montgomery County, Maryland, in an action entitled Hunter Group, Inc. v. Pike (No. 95647), for breach of the covenant not to compete contained in her employment agreement. Hunter also sued AGI for unlawful interference with that contractual relationship. That action was concluded in May 1994, following presentation of the plaintiff's case, when the Maryland court granted Pike's and AGI's motion for judgment because of Hunter's failure to present any evidence of damages.[3]

B. *Hunter's Covenant Not to Compete.*

The covenant not to compete contained in Pike's employment contract is similar to those used by Hunter with respect to all of its employees who may or may not work in, but are not residents of, California. The covenant in Pike's employment contract provided: "During the term of [her] employment, and for a period of [one year] after the date of its termination, [Pike] agrees that [she] will not render, directly or indirectly, any services of an advisory or consulting nature, whether as an employee or otherwise, to any business which is a competitor of [Hunter]." The noncompetition clause does not apply where the employee is "terminated by [Hunter] for economic or budgetary reduction purposes." Pike's employment contract expressly provided it was to be "governed by and construed in accordance with the laws of the State of Maryland."

Hunter uses the covenant not to compete for the admitted purpose of deterring and preventing the solicitation, recruitment and hiring of Hunter's employees by its competitors, especially those in California. Hunter intends

---

[3]In the course of argument on the motion for judgment, the Maryland court found that the covenant not to compete in Pike's employment agreement was valid on its face and enforceable, at least under Maryland law. However, as far as this record discloses, the parties did not actively litigate, and the Maryland court did not actually decide, the *choice-of-laws* issue presented in the instant action. Even if it did decide that Maryland law determines the enforceability of Hunter's covenant not to compete in all circumstances, the court's ruling on the choice-of-laws issue was not essential to the judgment in favor of Pike and AGI and, thus, need not be given issue preclusive (collateral estoppel) effect. (See *Lumpkin* v. *Jordan* (1996) 49 Cal.App.4th 1223, 1230 [57 Cal.Rptr.2d 303]; Rest.2d Judgments, § 27.)

that the covenant not to compete will serve as a complete barrier between its competitors and all of its employees. Hunter's use of the covenants not to compete also allows it to avoid a "bidding war" that would increase the salary of its consultants. Hunter has admitted its consultants cannot, and do not, shop for a potential offer from a competitor to obtain leverage in salary negotiations with Hunter. Hunter has objected, and continues to object, to what Hunter calls AGI's "poor business practice" of "trying to hire [Hunter's] people and steal them away from all their competitors." Indeed, Hunter's president testified that the covenant not to compete was designed to "scare [AGI] away" from soliciting its employees and that, until the Maryland action, Hunter's strategy had "worked quite well for three years."

Hunter endeavors to assure the efficacy of its covenant not to compete by repeatedly notifying competitors in California, including AGI, that they are not to solicit, recruit, or hire any Hunter employee in California. For example, in a letter of July 20, 1989, Hunter warned AGI, as follows: "[Y]ou should be aware [Hunter] has secured very strict employment agreements with each staff that disallows working for a competitor company or in a competitive position upon leaving Hunter. We would seek an injunction barring any provision of similar services by Hunter employees hired by [AGI]." Similarly, during the pendency of this action in August 1994, Hunter warned AGI in writing to "cease and desist its solicitation of [Hunter] employees." Hunter's covenant not to compete has, in fact, chilled the interest of Hunter's consultants to seek employment with its competitors, and has chilled AGI's efforts to solicit and recruit such consultants.

## C. *The Instant Action.*

AGI and Pike filed their original verified complaint in San Francisco Superior Court on April 16, 1993, seeking a declaratory judgment that section 16600, and not Maryland law, applied to Pike's covenant not to compete and AGI's recruitment of Pike. At that time the Maryland action was still pending, and Hunter successfully moved the San Francisco court on forum non conveniens grounds for a stay of the action pending completion of Maryland litigation. On January 20, 1994, AGI and Pike jointly filed a verified first amended complaint for declaratory relief.

In their amended complaint, AGI and Pike first sought a declaration that California law, specifically sections 16600 and 17200, and not Maryland law, applied to Pike's covenant not to compete, and that Hunter would be prohibited from enforcing any judgment obtained in the Maryland action. Second, AGI sought a declaration that these California statutes provided it with a "privilege" to contact and recruit any Hunter consultant, wherever he

or she resided or worked, who was employed under a covenant not to compete. Third, AGI sought a declaration that, by including an illegal noncompetition provision in its employees' contracts, Hunter was engaging in "unfair competition" within the meaning of section 17200. Finally, AGI sought a declaration that, pursuant to sections 16600 and 17200, Hunter was precluded from enforcing in California any out-of-state judgment or injunction it "might obtain" which upholds the validity of its covenant not to compete.

D. *The Trial Court's Orders.*

The parties filed cross-motions for summary judgment or, in the alternative, summary adjudication, in the law and motion department of the San Francisco Superior Court. On December 13, 1994, the Honorable William Cahill issued an order granting AGI's motion in part, ruling as follows: (1) As a matter of law, California law applies to the actions of AGI in *calling and recruiting from California*, any Hunter consultants or former consultants who have covenants not to compete in their employment contracts. (2) Sections 16600 and 17200 permit AGI to recruit and hire from California any Hunter consultants who are *residents of California*, and the use by Hunter of covenants not to compete, for such employees, is illegal under sections 16600 and 17200. (3) California law applied to *Pike's* covenant not to compete, which was "invalid and unenforceable in California" as to her but, in any event, the covenant with Hunter no longer prohibited her from working for AGI. Judge Cahill *denied* AGI's motion to the extent it sought a declaration that Hunter's covenant is unenforceable against its consultants "who work or have worked in California, or who report to or are managed from, or have reported to or have been managed from, any [Hunter] California office," ruling that "[a] case-by-case evaluation is needed for these individuals." Judge Cahill also ruled that case-by-case evaluation would be necessary for any out-of-state judgment or injunction against AGI because of its recruitment or hiring of a Hunter employee who has a covenant not to compete. Finally, Judge Cahill declined to recognize a "privilege," based on sections 16600 and 17200, in favor of AGI.[4]

The balance of the case proceeded to trial in January 1995 before the Honorable Roy Norman, an assigned judge. The matter was submitted after a half-day of live testimony by AGI's president, William Campbell, and the filing of a stipulated statement of facts.

On January 30, 1995, Judge Norman issued a statement of decision, denying AGI's claims for declaratory relief. However, on April 5, 1995,

---

[4]A final order on the parties' cross-motions for summary judgment and summary adjudication of issues was not filed until February 22, 1995, after the trial of this action was completed.

in response to AGI's objections to the proposed statement of decision, Judge Norman issued a revised statement of decision which, for the most part, adopted the rationale of Judge Cahill's prior ruling. Judge Norman also ruled—for the first time—that Hunter's covenant not to compete is an "unenforceable contract[] to restrain trade," the use of which constitutes "unfair competition" in violation of section 17200. More specifically, in his final statement of decision, Judge Norman ruled that AGI was entitled to a declaratory judgment, as follows:

"1. California law applies to [AGI's] hiring of [Hunter] employees to engage in a profession or business in California. The reason is that California has a strong public policy concerning contracts which would prohibit employment in California regardless of where the parties exchanged promises. The fact that [AGI] does the hiring itself from California is not an operative fact. The operative fact is that California is precluded from the benefits of a business or profession by contract.

"2. Sections 16600 and 17200 of the Business and Professions Code respectively do not confer a privilege. The former deprives certain contract provisions of legal recognition. The latter is a definition. Each separate [sic] and in combination are limitations on conduct to promote public policy. Under Section 17203, [AGI] is given the privilege of enforcing that public policy in its own interest to prevent its breach. The effect of Business and Professions Code section 16600 can be imagined to be an addendum to [Hunter's] non-compete clause to add the words 'void in California.' That neither gives the privilege to recruit or hire, it simply renders that promise unenforceable in California.

"3. With respect to [Hunter] employees who work or have worked or who report to or are managed from [Hunter's] California office, neither Business and Professions Code sections 16600 or 17200 state or imply that, foreign contracts valid where made, are vitiated by engaging in business in California. California's concern is to prevent the offending term from enforcement to the detriment of its citizens. The operative fact is not its offensive language but its offensive effect. [¶] [AGI's] recruitment efforts to secure employees for employment in California are protected indirectly by invalidating employment contracts which seek to preclude acceptance of such offers. Such efforts are not dependent on the employee's domicile nor his contacts with California. On the other hand, [AGI's] recruitment for employment beyond the borders of California are not brought under California law so as to apply California employment restrictions of Business and Professions Code section 16600 simply because that party has California connections.

"4. [Hunter] is bound by California law only to the extent that its consultants are free from the stricture against employment by a competitor in a business to be performed in California. This is so without reference to present residence or employment location and whether or not the employee has engaged in any of [Hunter's] business in California.

"5. No controversy exists at this time with regard to an existing out-of-state injunction or judgment against [AGI] enforcing [Hunter's] non-compete provision. The Court therefore declines to make any declaration with respect to such injunctions or judgments.

"6. The Court declines to render declaratory relief as specifically requested in paragraphs 50-52 and 55-57[5] of the First Amended Verified Complaint since these paragraphs, as specifically worded, are inconsistent with the law of California as this Court understands it to be and as stated herein."

Finally, Judge Norman was careful to add that the revised statement of decision, filed April 5, 1995, superseded his prior statement of decision, and that it was not intended to modify, vacate or change Judge Cahill's orders of December 13, 1994, and January 30, 1995, on the parties' cross-motions for summary judgment and summary adjudication of issues. On June 15, 1995,

---

[5]These paragraphs were part of the prayer for relief, as follows: "50. For a declaration that Business and Professions Code sections 16600 and 17200 give AGI a privilege, with respect to any of [Hunter's] computer consultants and former consultants, to call and recruit such consultants from California; [¶] 51. For a declaration that Business and Professions Code sections 16600 and 17200 permit AGI to recruit and hire, from California, any [Hunter] computer consultants and former consultants who are residents of California, who work or have worked in California, or who report to or are managed from, or have reported to or have been managed from, any California office, whether or not such employees have a Covenant Not To Compete with [Hunter]; [¶] 52. For a declaration that, under California law, [Hunter] may not attempt to enforce in California any out-of-state judgment or injunction which [Hunter] might obtain against AGI for AGI's recruitment or hiring of any [Hunter] computer consultant who has a Covenant Not To Compete with [Hunter]; [¶] . . . [¶] 55. For a declaration that [Hunter] is bound by the law of the State of California, specifically Business and Professions Code sections 16600 and 17200, with respect to its computer consultants who are residents of California, or who work or have worked in California, or who report to or are managed from, or have reported to or have been managed [from a Hunter] office in California. [¶] 56. For a declaration that with respect to [Hunter's] computer consultants who are residents of California, or who work or have worked in California, or who report to or are managed, or have reported to or been managed from, [a Hunter] office in California, [Hunter's] use of Covenants Not To Compete with such consultants is illegal, invalid and unenforceable under Business and Professions Code sections 16600 and 17200. [¶] 57. For a declaration that, under California law, [Hunter] may not attempt to enforce in California any out-of-state judgment or injunction which [Hunter] might obtain against AGI for interference in [Hunter's] Covenant Not To Compete."

judgment was entered based on Judge Norman's revised statement of decision and Judge Cahill's orders. Hunter timely filed a "Notice of Partial Appeal," specifying portions of this judgment.

## II. DISCUSSION

This appeal raises one of the many interesting and difficult legal questions created by the rapid expansion of computer technology. It involves what might be called the "virtual employer," one whose employees work out of their homes, or from branch offices scattered throughout the country, or at customer sites in various states, as necessary to provide "consulting" services with respect to the customers' computerized human resources systems. Competition among such employers is fierce, both for customers and for qualified employees. The situation gives rise to potential conflicts among the laws governing solicitation, recruitment, and employment in the various states where the employees, employers and customers can be said to "reside."

In this case, we must decide whether California law may be applied to determine the enforceability of a covenant not to compete, in an employment agreement between an employee who is not a resident of California and an employer whose business is based outside of California, when a California-based employer seeks to recruit or hire the nonresident for employment in California. Before proceeding to the merits of the parties' dispute on that issue, however, we must address a few preliminary questions.

A. *Although Pike's Individual Claims Are Moot, the Trial Court Did Not Err in Adjudicating the Issue of Enforceability of Hunter's Noncompetition Clause When Invoked to Preclude Employment in California.*

 Hunter contends that certain of AGI's claims about the enforceability of its covenants not to compete are not justiciable. Specifically, Hunter challenges those portions of the declaratory judgment relating to Hunter consultants who are residents of California, contending they reflect a decision on issues as to which there was and is no "actual controversy." Hunter also contends that Pike's individual claims are moot.

 Code of Civil Procedure section 1060 confers standing upon "[a]ny person interested under a . . . contract" to bring an action for declaratory relief "in cases of actual controversy relating to the legal rights and duties of the respective parties." "Whether a determination is proper in an action for declaratory relief is a matter within the trial court's discretion . . . and the

court's decision to grant or deny relief will not be disturbed on appeal unless it be clearly shown . . . that the discretion was abused." (*Hannula* v. *Hacienda Homes* (1949) 34 Cal.2d 442, 448 [211 P.2d 302, 19 A.L.R.2d 1268]; see also *General of America Ins. Co.* v. *Lilly* (1968) 258 Cal.App.2d 465, 471 [65 Cal.Rptr. 750].) Whether an action is justiciable for purposes of Code of Civil Procedure section 1060 is also a matter entrusted to the sound discretion of the trial court. (See *Tehachapi-Cummings County Water Dist.* v. *Armstrong* (1975) 49 Cal.App.3d 992, 998 [122 Cal.Rptr. 918].) In this case, we conclude the trial court did not abuse its discretion either by finding AGI's claims to be justiciable, or by granting declaratory relief in AGI's favor.

Hunter does not appear to challenge AGI's standing as a "person interested under" the noncompetition agreement. Nor does Hunter raise any issue about the justiciability of the parties' dispute about the enforceability of covenants not to compete in the employment agreements of its nonresident employees.[6] Hunter simply contends that any controversy over the use of covenants not to compete for its employees residing in California is purely "conjectural" because, as a matter of corporate policy, Hunter never has and never will include a noncompetition clause in the employment agreements of its employees who reside in California.

In this regard, Hunter's justiciability argument is beside the point. It is true that Hunter never really disputed and, indeed, conceded it cannot lawfully require a covenant not to compete in the employment agreement of any employee who is a California resident. Ordinarily, declaratory relief would be inappropriate in such a situation. (See *Auberry Union School Dist.* v. *Rafferty* (1964) 226 Cal.App.2d 599, 602-603 [38 Cal.Rptr. 223].) However, in this case, it was *necessary* for the trial court to determine as a

---

[6]Nor could it. AGI seeks declaratory relief regarding the enforceability of a specific contract, under which Hunter has made multiple threats of litigation and has on at least one occasion brought suit against AGI, and as to which AGI and Hunter will continue to have run-ins as they compete for employees to work on projects for their customers, and otherwise conduct their business in California. In these respects, we cannot fairly conclude that the trial court abused its discretion to grant declaratory relief. This is not a case in which the court is being called upon to "imagine a myriad of hypotheticals," or to speculate on the application of law to such hypotheticals. (Cf. *BKHN, Inc.* v. *Department of Health Services* (1992) 3 Cal.App.4th 301, 309-310 [4 Cal.Rptr.2d 188]; see also *Brownfield* v. *Daniel Freeman Marina Hospital* (1989) 208 Cal.App.3d 405, 410-411 [256 Cal.Rptr. 240].) The trial court had before it evidence of the very real and concrete controversy over Pike's recruitment by AGI. The court reasonably could find that the dispute over Pike's employment is typical of controversies that will almost certainly continue to arise between AGI and Hunter over nonresident employees. Furthermore, it is essentially a pure question of law whether Hunter's covenant not to compete is enforceable when invoked to prevent a California-based competitor from soliciting or recruiting a current or former Hunter consultant for employment in California. Plainly, AGI is such a competitor and it has been and will continue to be subject to litigation in this precise factual context.

preliminary matter whether the particular noncompetition clause used by Hunter would be enforceable if required of California employees. If so, there would have been no need to decide the central issue raised by AGI's and Pike's complaint: Whether the covenant is enforceable with respect to Hunter's nonresident employees who—like Pike—maintain their foreign domicile, but seek to engage in a business or profession in California. (§ 16600.)[7] That the trial court chose to articulate a logical premise of its declaratory judgment was not error.

As to Hunter's mootness argument, it is true the one-year term stated in Pike's covenant had expired, and final judgment had been entered in her favor in the Maryland lawsuit, by the time the summary judgment proceedings commenced below. There is nothing to indicate that Pike faces any further liability under her noncompetition pledge, or that she is interested in becoming reemployed by Hunter (or by any other out-of-state company that requires covenants not to compete from its consultants) any time in the near future. Thus, as Hunter contends, Pike's individual claims for declaratory relief under Code of Civil Procedure section 1060, for the alleged violations of sections 16600 and 17200, were and are entirely moot.[8] Of course, there is little to be gained by vacating those portions of Judge Cahill's order relating to Pike's noncompetition agreement. As we discuss in part II.B, *post*, the declaratory judgment in favor of AGI with respect to nonresident employees necessarily implies Hunter's noncompetition clause would not be enforceable to prevent the recruitment and hiring of any employee situated precisely as was Pike. Nevertheless, this court is not in the business of deciding issues that have lost their vitality as matters in "actual controversy." Accordingly, we will vacate those portions of the judgment relating to Pike's individual claims for declaratory relief.

B. *The Trial Court Did Not Err in Concluding That California Law Governs the Issues Presented in This Appeal.*

■ Hunter's principal contention on appeal is that the trial court erred in its application of conflict of laws principles to this case. AGI counters

---

[7]In addition, there is the issue of enforceability of Hunter's covenants not to compete as to *former consultants* who may relocate to become residents of California during the period of noncompetition stated in their employment agreements, insofar as such nonresident employees may wish to become employed in California.

[8]There is no argument that Pike's claim is "capable of repetition, yet evading review" (*Gannett Co.* v. *DePasquale* (1979) 443 U.S. 368, 377 [99 S.Ct. 2898, 2904, 61 L.Ed.2d 608]), or that the controversy was of such short duration so as to preclude normal appellate review (*In re Willon* (1996) 47 Cal.App.4th 1080, 1089 [55 Cal.Rptr.2d 245]; cf. *Press-Enterprise Co.* v. *Superior Court* (1986) 478 U.S. 1, 6 [106 S.Ct. 2735, 2739, 92 L.Ed.2d 1]; *San Jose Mercury-News* v. *Municipal Court* (1982) 30 Cal.3d 498, 501, fn. 2 [179 Cal.Rptr. 772, 638 P.2d 655]).

that there is no true conflict of laws issue because all of the rulings by the trial court govern conduct and activities that occur exclusively in California. We reject both of these arguments but nevertheless conclude that the trial court did not err in applying California law to the issues raised by the complaint.

It is important at the outset to clear away issues we need not decide to resolve the conflict of laws issue presented. As we have noted, there is no real dispute about the enforceability of a covenant not to compete in the employment agreement of Hunter employees who are residents of California. To the extent AGI and Pike alleged that Hunter requires a covenant not to compete from its employees who *are* California residents, Hunter has conceded that California law invalidates such provisions. It is quite clear that a covenant prohibiting a California employee from working for a competitor after termination of his or her employment violates section 16600, except in two circumstances not present here. (*Muggill* v. *Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242 [42 Cal.Rptr. 107, 398 P.2d 147, 18 A.L.R.3d 1241]; *Metro Traffic Control, Inc.* v. *Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 860 [27 Cal.Rptr.2d 573].) Nor is there any genuine dispute about AGI's recruitment of Hunter consultants exclusively "for employment beyond the borders of California." Judge Norman clearly ruled that California law does *not* apply to or regulate such recruitment or employment, and AGI does not object to that aspect of the trial court's judgment.

What is at issue is the trial court's ruling that Hunter's noncompetition clause is rendered unenforceable by sections 16600 and 17200 as against its nonresident consultants (such as Pike) when a California employer (such as AGI) seeks to hire them *for employment in California.*[9] Hunter does not suggest any theory under which this use of its covenant not to compete would survive challenge if California law applies. Hunter simply contends the trial court should have decided this issue under Maryland law— in accordance with the contractual choice-of law-provision in the employment agreements of Hunter's nonresident employees—and, thus, found its noncompetition covenant to be enforceable in the present context. (See *Holloway* v. *Faw, Casson & Co.* (1990) 319 Md. 324 [572 A.2d 510, 515] [noncompetition agreements are enforceable so long as they are reasonable in scope and duration]; *Ruhl* v. *F. A. Bartlett Tree Expert Co.* (1967) 245 Md. 118 [225 A.2d 288, 291] [same].) AGI, for its part, does not dispute that

[9]Again, this statement of the issue encompasses former Hunter employees who may relocate from out of state to become California residents during the period of noncompetition stated in their employment agreements.

Hunter's covenant not to compete would be enforceable in these circumstances if Maryland law applies, but contends that application of Maryland law to the parties' dispute would be contrary to fundamental public policy of California. Thus, we must decide whether California or Maryland law applies to a dispute over the enforceability of Hunter's noncompetition clause when a California employer (such as AGI) seeks to hire one of Hunter's nonresident consultants (such as Pike) for employment in California.

### 1. *California Choice-of-Law Principles.*

■ Perhaps the most comprehensive statement of the California choice of laws principles applicable to this case can be found in a federal court opinion upon which Hunter places heavy reliance. In *S. A. Empresa, etc.* v. *Boeing Co.* (9th Cir. 1981) 641 F.2d 746 (*S.A. Empresa*), the court observed: "California does not apply a mechanical test to choice-of-law questions. Rather, it employs the 'governmental interest analysis.' Under this approach, California law will be applied unless the foreign law conflicts with California law and California and the foreign jurisdiction have significant interests in having their law applied. [Citations.] Where significant interests conflict, the court must assess the 'comparative impairment' of each state's policies. [Citations.] The law applied will be that of the state whose policies would suffer the most were a different state's law applied. [Citations.] A separate choice-of-law inquiry must be made with respect to each issue in a case. [Citation.] [¶] The preceding rules apply regardless of whether the dispute arises out of contract or tort. [Citation.] An exception applies, however, in the case of contracts with choice-of-law provisions. California will apply the substantive law designated by the contract unless the transaction falls into either of two exceptions: [¶] 1) the chosen state has no substantial relationship to the parties or the transaction, or [¶] (2) application of the law of the chosen state would be contrary to a fundamental policy of the state. [Citations.] Under the second exception, where application of a choice-of-law provision would result in the contravention of California's public policy, the provision will be ignored to the extent necessary to preserve public policy. [Citations.]" (*Id.* at pp. 749-750; see also *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313, 319-321 [128 Cal.Rptr. 215, 546 P.2d 719] ["governmental interest" and "comparative impairment" approaches to choice of law problems]; *Sommer* v. *Gabor* (1995) 40 Cal.App.4th 1455, 1468 [48 Cal.Rptr.2d 235] [summarizing "comparative impairment" test]; *North American Asbestos Corp.* v. *Superior Court* (1986) 180 Cal.App.3d 902, 905 [225 Cal.Rptr. 877] [application of comparative impairment test in " 'true' " conflict situation]; *Dixon Mobile Homes, Inc.* v. *Walters* (1975) 48 Cal.App.3d 964, 972

[122 Cal.Rptr. 202] ["comparative impairment" approach applies to both tort and contract cases].)

Recently, the *S.A. Empresa* court's exposition and application of California choice of laws rules met with the approval of our Supreme Court. (*Nedlloyd Lines B.V.* v. *Superior Court* (1992) 3 Cal.4th 459, 464-466 & fn. 1 [11 Cal.Rptr.2d 330, 834 P.2d 1148] (*Nedlloyd*).) The *Nedlloyd* court recognized that, although the Ninth Circuit did not expressly say so, it was applying the "modern, mainstream" approach of section 187 of the Restatement Second of Conflicts of Laws (hereinafter Restatement), and, more particularly, subdivision (2) of that section.[10] (*Nedlloyd, supra,* 3 Cal.4th at pp. 464-466, fns. 1 & 6; see also *S.A. Empresa, supra,* 641 F.2d at p. 749, citing *Gamer* v. *duPont Glore Forgan, Inc.* (1976) 65 Cal.App.3d 280, 287-288 [135 Cal.Rptr. 230] [explicit reference to Rest. § 187].)

The *Nedlloyd* court elaborated: "[T]he proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. . . . If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. . . . If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue . . . .' (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstances we will decline to enforce a law contrary to this state's fundamental policy." (*Nedlloyd, supra,* 3 Cal.4th at p. 466, italics in original, fns. omitted.)

Although the *Nedlloyd* court thus outlined the analytical approach to cases involving contractual choice-of-law provisions, it expressly declined to

---

[10]In relevant part, Restatement section 187, subdivision (2), provides that the law of the chosen state will be applied *unless*: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, *or* [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue *and* which . . . would be the state of applicable law in the absence of an effective choice of law by the parties." (Italics added.)

decide how the principles of subdivision (2)(b) of section 187 of the Restatement would apply to cases in which the interests of the chosen state clash with a "fundamental policy" of California, because the court found that no "fundamental policy" of California was implicated in the case before it. (*Nedlloyd, supra,* 3 Cal.4th at pp. 466, fn. 6, 468.) However, in dicta, the *Nedlloyd* court cited *S.A. Empresa, supra,* 641 F.2d 746, as an example of a case involving such a conflict and, indeed, suggested that the Ninth Circuit had properly enforced the parties' contractual choice-of-law provision after finding that the interests of the chosen state (Washington) were materially greater than those of the forum state (California) *even though* "fundamental policy" of California may have been implicated in the parties' dispute. (*Nedlloyd, supra,* at p. 466, fn. 6; *S.A. Empresa, supra,* at pp. 750-753.)

One of the difficulties in these cases is that the "materially greater interest" test of subdivision (2)(b) of section 187 of the Restatement overlaps with the "governmental interest" and "comparative impairment" analyses that must be conducted in California to determine which state "would be the state of the applicable law in the absence of an effective choice of law by the parties" (see *Dixon Mobile Homes, Inc.* v. *Walters, supra,* 48 Cal.App.3d at p. 972). Neither *Nedlloyd* nor *S.A. Empresa,* nor any other case disclosed by our research, discusses the relationship between and among these tests. The approach utilized by the Ninth Circuit for dealing with that problem in the *S.A. Empresa* case appears to have been to first examine the respective "governmental interests" of the chosen and forum states and then determine the extent to which those interests would be impaired by application of the other state's laws. (See *S.A. Empresa, supra,* 641 F.2d at pp. 752-753.)[11] Under this approach, a court can decline to enforce the parties' contractual choice-of-law provision only if the interests of the forum state are "materially greater" than those of the chosen state, *and* the forum state's interests would be more seriously impaired by enforcement of the parties' contractual

[11]In that regard, the *S.A. Empresa* court apparently found that Washington had a materially greater interest in having its law determine the validity of an exculpatory clause in a contract for sale of a plane that later crashed, i.e., a clause which effectively immunized the Washington-based airplane manufacturer against a breach of warranty suit filed by a foreign purchaser (a Brazilian corporation) and, thus, required the purchaser to bear the entire loss even if misconduct by the manufacturer caused the crash. (641 F.2d at p. 753.) Indeed, the *S.A. Empresa* court did not consider California as having any significant interest in the dispute because its public policy was designed to protect its citizens and the plaintiff purchaser was not even a California corporation. Accordingly, even though California public policy may have prohibited enforcement of the exculpatory clause (see Civ. Code, § 1668), and despite the probability that application of the chosen state's laws would produce a result in conflict with a "fundamental policy" of California, the *S.A. Empresa* court held that it was proper to apply the law of the chosen state, Washington. (*S.A. Empresa, supra,* 641 F.2d at p. 753.)

choice-of-law provision than would the interests of the chosen state by application of the law of the forum state.[12]

### 2. *Application of California Choice-of-Law Rules to This Case.*

 Hunter is correct that the trial court did not explicitly undertake any formal choice-of-law analysis, as prescribed by the foregoing case law, but that does not mean the trial court came to the wrong conclusion.[13] There is no dispute that the chosen state—Maryland—has a "substantial relationship" to the parties and their transaction. There is also no dispute that there is a "reasonable basis" for the parties' contractual choice-of-law provision. Indeed, the mere fact that one of the parties to the contract is incorporated in the chosen state is sufficient to support a finding of "substantial relationship," and the mere fact that one of the parties resides in the chosen state provides a "reasonable basis" for the parties' choice of law. (*Nedlloyd, supra,* 3 Cal.4th at pp. 467-468.)

The parties also agree that California and Maryland are "potentially concerned" states with diametrically opposed laws regarding the enforceability of Hunter's noncompetition clause. (See *Sommer v. Gabor, supra,* 40 Cal.App.4th at p. 1467; *North American Asbestos Corp. v. Superior Court, supra,* 180 Cal.App.3d at p. 905.)[14] As we have noted, with certain limited exceptions, California law renders void such provisions (§ 16600), while

---

[12]It is efficient to begin the analysis under Restatement section 187, subdivision (2)(b), with the standard "governmental interest" and "comparative impairment" tests because an early determination that the chosen state and the state that would provide "the applicable law in the absence of an effective choice of law by the parties" are one and the same, or a finding that the chosen state is the *only* state with a significant interest in having its law applied, obviates any need to weigh the forum's public policy interests against the chosen state's interests or to determine which state has the "materially greater interest" in having its law applied.

[13]Furthermore, it is clear Judge Norman did consider both the interests of the concerned states, and the parties' "contacts" and "connections" with those states. That he did not analyze the issues precisely as Hunter would have liked did not render his statement of decision, or the judgment, deficient in any way.

[14]Thus, this is a " 'true' conflict" case. (See *Sommer v. Gabor, supra,* 40 Cal.App.4th at p. 1467; *North American Asbestos Corp. v. Superior Court, supra,* 180 Cal.App.3d at p. 905.) There are other "potentially concerned" states including, for example, the ones in which other nonresident Hunter employees may reside, which may have interests, like Maryland's, in the enforceability of covenants not to compete, valid where made, and the competitive advantages of such provisions. On the other hand, other "potentially concerned" states may broadly prohibit covenants not to compete, as does California, with the result being no real "choice-of-law" issue. Or the "other" states might allow "reasonable" restrictions on the Hunter employee's freedom to compete after termination, but may find one year too long a period or the geographical reach of the covenant too broad. However, the parties focus their choice of laws arguments on California and Maryland as the two "potentially concerned states" with respect to the enforceability of Pike's covenant not to compete, and agree that these laws call

Maryland law permits them so long as they are reasonable in scope and duration (*Holloway* v. *Faw, Casson & Co., supra,* 572 A.2d 4th at p. 515; *Ruhl* v. *F. A. Bartlett Tree Expert Co., supra,* 225 A.2d at p. 291). Furthermore, as we will discuss, each state purports to have significant interests in having its law applied. Thus, the real issues for decision are whether Maryland's law is contrary to a *fundamental* policy of California and, if so, which state has a "materially greater interest" in the determination of the issue and which state's interests would be more seriously impaired if its policy were subordinated to the policy of the other state. (*Bernhard* v. *Harrah's Club, supra,* 16 Cal.3d at p. 320; *Sommer* v. *Gabor, supra,* 40 Cal.App.4th at p. 1468.) As our Supreme Court has instructed, "careful consideration" of California policy and Maryland's interests is required in order to resolve these issues. (*Nedlloyd, supra,* 3 Cal.4th at p. 466, fn. 6.)

AGI is correct when it argues that section 16600 reflects a "strong public policy" of the State of California. (*KGB, Inc.* v. *Giannoulas* (1980) 104 Cal.App.3d 844, 848 [164 Cal.Rptr. 571]; *Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1971) 20 Cal.App.3d 668, 673 [97 Cal.Rptr. 811] (*Frame*); *Scott* v. *Snelling and Snelling, Inc.* (N.D.Cal. 1990) 732 F.Supp. 1034, 1042.) Indeed, the strength of California's policy interest was the *explicit* basis for Judge Norman's rulings on the applicability of California law to Hunter's noncompetition covenants insofar as it affects employment in California. As the Second Appellate District recently observed: "California courts have consistently declared this provision an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice. Section 16600 has specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when the employment has terminated, unless necessary to protect the employer's trade secrets. [Citation.] The corollary to this proposition is that [a competitor] may solicit another's employees if they do not use unlawful means or engage in acts of unfair competition." (*Metro Traffic Control, Inc.* v. *Shadow Traffic Network, supra,* 22 Cal.App.4th at p. 859.) In *Diodes, Inc.* v. *Franzen* (1968) 260 Cal.App.2d 244 [67 Cal.Rptr. 19], the court further explained the policy underpinnings of section 16600, as follows: "The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change." (*Diodes, Inc.* v. *Franzen, supra,* at p. 255.) It follows that California has a strong interest in

---

for diametrically opposite results on that issue. For that reason, our discussion will maintain the same focus.

protecting the freedom of movement of persons whom California-based employers (such as AGI) wish to employ to provide services in California, regardless of the person's state of residence or precise degree of involvement in California projects, and we see no reason why these employees' interests should not be "deemed paramount to the competitive business interests" of out-of-state as well as in-state employers. (*Ibid.*)

To the extent it is invoked by a California *employer* to protect itself from "unfair competition," moreover, section 16600 (as implemented through sections 17200 and 17204) is all the more important as a statement of California public policy which ensures that California employers will be able to compete effectively for the most talented, skilled employees in their industries, wherever they may reside. In this day and age—with the advent of computer technology and the concomitant ability of many types of employees in many industries to work from their homes, or to "telecommute" to work from anywhere a telephone link reaches—an employee need not reside in the same city, county, or state in which the employer can be said to physically reside. California employers in such sectors of the economy have a strong and legitimate interest in having broad freedom to choose from a much larger, indeed a "national," applicant pool in order to maximize the quality of the product or services they provide, as well as the reach of their "market." California has a correlative interest in protecting its employers and their employees from anticompetitive conduct by out-of-state employers such as Hunter—including litigation based on a covenant not to compete to which the California employer is not a party—who would interfere with or restrict these freedoms.

Hunter suggests, however, that Maryland has an equally strong public policy favoring the use and enforcement of its noncompetition covenants, insofar as they serve the interests of Maryland employers in preventing recruitment of employees who provide "unique services," and the misuse of trade secrets, routes, or lists of clients, or solicitation of customers. (*Fowler* v. *Printers II* (1991) 89 Md.App. 448 [598 A.2d 794, 799]; *Becker* v. *Bailey* (1973) 268 Md. 93 [299 A.2d 835]; *Holloway* v. *Faw, Casson & Co., supra,* 572 A.2d at p. 515.) However, there is nothing in the record of this case to support a finding that failure to enforce Hunter's noncompetition covenant would significantly impair either of the asserted interests. We have no reason to doubt the parties' showing that highly skilled consultants such as Pike are a scarce resource. But, with all due respect to Ms. Pike, there is no showing

that she performed "unique services" for Hunter.[15] There is also no showing that Pike was attempting to exploit Hunter's trade secrets or other protected information about its customers. In any event, should such concerns arise with respect to the recruitment of other Hunter consultants for employment in California, Hunter has recourse under both Maryland and California law. (See, e.g., *Morlife, Inc.* v. *Perry* (1997) 56 Cal.App.4th 1514 [66 Cal.Rptr.2d 731].)

We are, therefore, convinced that California has a materially greater interest than does Maryland in the application of its law to the parties' dispute, and that California's interests would be more seriously impaired if its policy were subordinated to the policy of Maryland. Accordingly, the trial court did not err when it declined to enforce the contractual conflict of law provision in Hunter's employment agreements. To have done so would have been to allow an out-of-state employer/competitor to limit employment and business opportunities in California. As the *Nedlloyd* court held, California courts are not bound to enforce a contractual conflict of law provision which would thus be "contrary to this state's fundamental policy." (*Nedlloyd, supra,* 3 Cal.4th at p. 466, fn. omitted; see also *Frame, supra,* 20 Cal.App.3d at p. 673; *Hollingsworth Solderless Terminal Co.* v. *Turley* (9th Cir. 1980) 622 F.2d 1324, 1338; *Davis* v. *Jointless Fire Brick Co.* (9th Cir. 1924) 300 F. 1, 2-3; *Scott* v. *Snelling and Snelling, Inc., supra,* 732 F.Supp. at pp. 1039-1040, 1041.)

*Frame, supra,* 20 Cal.App.3d 668, is closely on point. In that case, the plaintiff brought an action seeking a determination that a portion of an agreement between the plaintiff and his former employer, a stock brokerage, was void under section 16600 to the extent it provided for forfeiture of profit-sharing rights by any employee who voluntarily terminated his employment and went to work for a competitor. (20 Cal.App.3d at p. 670.) The trial court and the court of appeal agreed with the plaintiff, and rejected the employer's argument that the forfeiture clause was valid under New York law and, thus, enforceable under a clause in the profit-sharing plan designating New York law as governing their rights under the contract. (*Id.* at p. 673.) The *Frame* court held that it could not allow New York law to defeat the "strong public policy" embodied in section 16600 and, thus, declined to give effect to the parties' contractual choice-of-law provision. (20 Cal.App.3d at p. 673; see also *Davis* v. *Jointless Fire Brick Co., supra,* 300 F. at pp. 2-3.) It is noteworthy that the court in *S.A. Empresa, supra,* 641 F.2d

---

[15]It appears that Hunter's *real* concern about Pike's recruitment was that it would have to pay more for a replacement than it was paying her. But, in light of the "no damages" judgment in the Maryland court, even that concern did not materialize.

746, cited *Frame* for the proposition that ". . . where application of a choice-of-law provision would result in the contravention of California's public policy, the provision will be ignored to the extent necessary to preserve public policy." (*Id.* at p. 749, cited with approval in *Nedlloyd, supra,* 3 Cal.4th at pp. 464-466, fns. 1 & 6.)

In defense of its noncompetition clause, Hunter does not rely heavily upon a claim that the State of Maryland has legitimate and compelling interests in the enforcement of the covenant, beyond a general interest in the enforceability of a contract valid where made. Hunter simply suggests that we should focus our attention on the "relevant contacts" of the parties with California and Maryland (see *Robert McMullan & Son, Inc.* v. *United States Fid. & Guar. Co.* (1980) 103 Cal.App.3d 198, 205 [162 Cal.Rptr. 720], citing *Dixon Mobile Homes, Inc.* v. *Walters, supra,* 48 Cal.App.3d at p. 972, fn. 4), and, on that basis, conclude the trial court erred by reading section 16600 as a "super-statute" applicable to out-of-state contracts as to which California has no interest. In a related argument, Hunter suggests that Maryland law was the "only law apparently applicable" at the time of contracting and that we must honor the expectations of the parties in that regard. (See *Bernkrant* v. *Fowler* (1961) 55 Cal.2d 588, 594-595 [12 Cal.Rptr. 266, 360 P.2d 906].)[16] It is only by exaggerating and distorting the reach of the trial court judgment, and by ignoring important features of "relevant contacts" analysis, that Hunter can take this position.

■ "With the governmental interest approach, 'relevant contacts' stressed by the Restatement Second of Conflict of Laws are not disregarded, but are examined in connection with the analysis of the interest of the involved state in the issues, the character of the contract and the relevant purposes of the contract law under consideration." (*Dixon Mobile Homes, Inc.* v. *Walters, supra,* 48 Cal.App.3d at p. 972, fn. omitted.) In contract cases, these "relevant contacts" include: " '(a) the place of contracting, [¶] (b) the place of negotiation of the contract, [¶] (c) the place of performance, [¶] (d) the location of the subject matter of the contract, and [¶] (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.' " (*Id.,* at p. 972, fn. 4, quoting Rest. § 188, subd. (2).)

---

[16]Hunter also relies on *Roesgen* v. *American Home Products Corp.* (9th Cir. 1983) 719 F.2d 319, a case in which the Ninth Circuit affirmed a trial court's ruling that New York law applied to a forfeiture provision in an employment agreement, which was triggered by the employee's subsequent employment by a California-based competitor of the first employer. That reliance is misplaced. The federal appellate court applied the highly deferential "clear error" standard of review to the trial court's ruling, one which Hunter insists is inappropriate in the conflict of laws context. Indeed, application of such a lenient standard of review may well have resulted in an erroneous decision under California law by a federal court, which we need not follow. (Cf. *Muggill* v. *Reuben H. Donnelley Corp., supra,* 62 Cal.2d at p. 242; *Frame, supra,* 20 Cal.App.3d at pp. 672-673.)

In essence, Hunter suggests this court should mechanically apply an outdated—or at least incomplete—"choice-of-laws" test which, it contends, would result in a choice of Maryland law because that was the place where the contract was negotiated, entered into and performed, as well as "the domicil, residence, nationality, place of incorporation and place of business" of the parties to the contract, i.e., Hunter and Pike. While partially correct, this argument indicates that Hunter's focus is on the wrong "contract." There is no issue in this case about the enforceability of Pike's employment agreement, only of the covenant not to compete.[17] That covenant was negotiated and signed in Maryland, which is both Pike's and Hunter's state of residence, but Maryland was not the exclusive place of business of either Hunter or Pike and was not necessarily the place where the covenant was to be "performed." In this case, moreover, the contracting parties were undoubtedly well aware that the purpose of the noncompetition clause was to prevent Hunter's competitors, *especially* those in California, from recruiting and hiring Hunter's consultants. Thus, the parties were or should have been alerted to the possibility that California law could come into play in the course of their relationship. In fact, the issue of "performance" arose—at least in part—in California when Pike was recruited by and accepted employment with a California employer to perform services in California. Similarly, although Hunter overlooks this aspect of the Restatement test, "the subject matter of the contract" is arguably subsequent employment which was, in this case, employment by a competitor who is "located" in California.[18]

Even more fundamentally, however, Hunter overlooks the facts that AGI is a key player in this drama. AGI is a California employer against whom Hunter has repeatedly threatened and attempted to "enforce" the relevant "contract"—a contract, as we have noted, to which AGI is not even a party. We simply cannot ignore AGI's interests, and those of the state of California, with respect to enforceability of Hunter's noncompetition covenants as it affects employment and business opportunities in California.

Nor can we overlook the fact that Hunter itself has significant "contacts" with California. Hunter maintains an office in California, conducts business in California, competes head-to-head with AGI for California customers, and

[17]Thus, we express no opinion about the enforceability of other provisions in the employment agreements of Hunter consultants who may perform services in California but whose contracts expressly state that they are to be "governed by and construed in accordance with the laws of the State of Maryland."

[18]In these respects, *Bernkrant* v. *Fowler, supra,* 55 Cal.2d 588, is distinguishable because the contract in that case was a "purely local transaction" made and performed in Nevada, involving the refinancing of obligations arising from the sale of Nevada land and secured by interests therein. (*Id.* at pp. 594-595.)

maintains close relationships with California software companies whose products it supports. Hunter also freely admits it has actively sought to recruit AGI employees who, under California law and AGI policy, cannot be saddled with a covenant not to compete. Indeed, Hunter even pays its current employees a reward for referring any AGI consultant who is successfully recruited for employment by Hunter. Thus, if we were to engage only in the "relevant contacts" analysis Hunter urges, we would not find error in the trial court's decision to apply California law.

Finally, Hunter contends that the trial court's declaratory judgment was "woefully vague and ambiguous" and, for that reason, unenforceable. We disagree. It is true that, to fall within the scope of the trial court's declaratory judgment, a recruited employee need not have had any prior contact with California, so long as the goal of the solicitation is "employment in California," or employment in "business to be performed in California." As to any such employee, the trial court declared that Hunter's covenant not to compete is invalidated by section 16600. In essence, the trial court acted to protect AGI's freedom to solicit or recruit out-of-state consultants for employment in California, as well as the rights of non-California residents, who are *prospective* employees of a California company, to engage in a business or profession in California if they so choose. (§ 16600.) Under Judge Norman's ruling, however, it is plainly not sufficient simply to be employed by a California-based employer such as AGI, or to be treated as a California employee for tax and other legal purposes, if the employee is to perform services exclusively "beyond the borders of California."

Under Hunter's own reasoning, it could not enforce its noncompetition covenant against a former consultant who accepts a position with AGI after moving to California and becoming a "citizen" of this state—even if the consultant does 100 percent of his or her work outside the State of California. But we agree with the trial court that the enforceability of Hunter's noncompetition covenant does not turn on whether the recruited employee physically resides in California. The concept of "employment in California" is broader than that, at least in the expansive and dispersed industry with which we deal in this case. It must also take into account the location of the employer, and the location of the employer's vendors and customers. Viewing the larger picture, the trial court did not err in concluding that an employee of a California-based employer, who performs services for California-based customers, is "employed in California" and, thus, "engage[d] in a business or profession" in California, so as to enjoy the protection of section 16600.[19]

---

[19]We note that Judge Norman did not attempt to define what it means to be employed "in California." We express no opinion as to the precise contours of that concept, leaving it to the

C. *The Trial Court Did Not Err in Finding That Hunter's Unlawful Use of Covenants Not to Compete to Preclude Employment in California Also Violates Section 17200.*

 Hunter also contends the trial court erred when it concluded that, in addition to violating section 16600, Hunter's use of its noncompetition covenant to prevent its former consultants from obtaining employment by AGI in California violates the Unfair Practices Act (UPA) (§ 17200 et seq.).[20] Section 17200 expresses California public policy against unfair

parties to raise the issue in the future if and when a dispute over that issue should arise in connection with the declaratory judgment in this case. We note, however, that our Supreme Court recently decided a case which may provide some guidance on the issue. In *Birbrower, Montalbano, Condon & Frank* v. *Superior Court* (1998) 17 Cal.4th 119 [70 Cal.Rptr.2d 304, 949 P.2d 1] (*Birbrower*), the court held that whether an attorney may be deemed to be practicing law "in California" for purposes of section 6125 (requiring State Bar membership) will be determined on a case-by-case basis using a "sufficient contacts" analysis, as follows: "In our view, the practice of law 'in California' entails sufficient contact with the California client to render the nature of the legal service a clear legal representation. In addition to a quantitative analysis, we must consider the nature of the unlicensed lawyer's activities in the state. Mere fortuitous or attenuated contacts will not sustain a finding that the unlicensed lawyer practiced law 'in California.' The primary inquiry is whether the unlicensed lawyer engaged in sufficient activities in the state, or created a continuing relationship with the California client that included legal duties and obligations. [¶] Our definition does not necessarily depend on or require the unlicensed lawyer's physical presence in the state. Physical presence here is one factor we may consider . . . , but it is by no means exclusive. For example, one may practice law in [California] although not physically present here by advising a California client on California law in connection with a California legal dispute by telephone, fax, computer, or other modern technological means. Conversely, although we decline to provide a comprehensive list of what activities constitute sufficient contact with the state, we do reject the notion that a person *automatically* practices California law 'in California' whenever that person practices law anywhere, or 'virtually' enters the state by telephone, fax, e-mail, or satellite. [Citations.]" (17 Cal.4th at pp. 128-129, italics in original.)

[20]Just prior to oral argument on November 25, 1997, AGI and Pike moved to dismiss this appeal on the grounds that Hunter failed to notify the Consumer Law Section of the Office of the Attorney General and the San Francisco District Attorney of the pendency of this "appellate proceeding," as required by section 17209 when the "application or construction" of the UPA is in issue. In *Californians for Population Stabilization* v. *Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273 [67 Cal.Rptr.2d 621], the Sixth Appellate District held that a notice served pursuant to section 17209 will be deemed timely if it is served within three days of the filing of the appellant's opening brief on appeal, but that failure to give timely notice is not a jurisdictional defect. (58 Cal.App.4th at pp. 284-285.) Counsel for Hunter candidly admits he was unaware of the requirements of section 17209, and that the statutory notices were not served until November 18, 1997, long after the case had been fully briefed and calendared for oral argument. We are not convinced that Hunter has made an adequate showing of good cause for an extension of time to serve the required notices. Nevertheless, based on the proofs of service filed in this court, we are satisfied that the relevant public prosecutors have had ample time to seek permission to participate as amici curiae or otherwise influence the prosecution of this appeal. Accordingly, we will deny AGI's motion to dismiss and proceed to the merits of Hunter's claims of error under section 17200. Should the Attorney General or the San Francisco District Attorney wish to intervene prior to entry

competition, and prohibits "wrongful business conduct in whatever context such activity might occur." (*Stoiber* v. *Honeychuck* (1980) 101 Cal.App.3d 903, 927 [162 Cal.Rptr. 194].) Section 17200 defines unfair competition as, inter alia, any "unlawful, unfair or fraudulent business practice." ■ "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. [Citation.] It is not necessary that the predicate law provide for private civil enforcement. [Citation.] As our Supreme Court put it, section 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq. [Citation.]" (*Saunders* v. *Superior Court* (1994) 27 Cal.App.4th 832, 838-839 [33 Cal.Rptr.2d 438].)

■ In this case, Judge Norman expressly found that, to the extent Hunter requires a covenant not to compete in the employment agreements of employees who are not California residents, but who seek employment in California with a California-based employer, the noncompetition agreement is an "unenforceable contract[] to restrain trade," use of which constitutes "unfair competition" in violation of section 17200. AGI contends, more broadly, that use of a covenant not to compete in this context is both "unlawful" and "unfair" within the meaning of section 17200.

■ California courts have recognized that an employer's business practices concerning its employees are within the scope of section 17200. (*Hudgins* v. *Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109, 1126 [41 Cal.Rptr.2d 46]; *Wilkinson* v. *Times Mirror Corp.* (1989) 215 Cal.App.3d 1034, 1052 [264 Cal.Rptr. 194]; *People* v. *Los Angeles Palm, Inc.* (1981) 121 Cal.App.3d 25, 32-33 [175 Cal.Rptr. 257].) For example, where the employer's policy or practice is forbidden by or found to violate the Labor Code, it may also be held to constitute an "unlawful business practice" subject to redress under the UPA. (See *Hudgins* v. *Neiman Marcus Group, Inc.*, *supra*, 34 Cal.App.4th at p. 1126 [employer policy of deducting losses for unidentified returns when calculating employees' wages violates both Labor Code section 221 and Business and Professions Code section 17200]; *People* v. *Los Angeles Palm, Inc.*, *supra*, 121 Cal.App.3d at pp. 32-35 [employer practice of crediting tips of restaurant employees against their minimum wage violates both Labor Code section 351 and Business and Professions Code section 17200].) The reasoning of these cases applies as well to contractual provisions that are found to violate the Business and Professions

---

of final judgment in this case, we will entertain a timely petition seeking rehearing on that basis, as to those portions of the opinion dealing with the UPA.

Code. (See *Saunders* v. *Superior Court, supra,* 27 Cal.App.4th at pp. 838-839; but cf. *Californians for Population Stabilization* v. *Hewlett-Packard Co., supra,* 58 Cal.App.4th at pp. 287-292.)[21]

 Of course, the twist in this case is that the employer whose practice is being challenged as "unfair competition" is not a California-based employer. But Hunter presents no authority that holds or suggests that nonresident businesses cannot be held to account for "wrongful business conduct" affecting California employers and employees (*Stoiber* v. *Honeychuck, supra,* 101 Cal.App.3d at p. 927), and none is disclosed by our research. Indeed, one California court has held that the law of the state in which a "restraint of trade" will occur overrides that of other states with more limited contacts with the transaction at issue. (*Bushkuhl* v. *Family Life Ins. Co.* (1969) 271 Cal.App.2d 514, 521 [76 Cal.Rptr. 602]; cf. *Birbrower, supra,* 17 Cal.4th at pp. 128-129 [section 6125 regulates out-of-state attorneys, and invalidates fee agreement made with out-of-state law firm to the extent contract is for legal representation "in California"].) We have already discussed at length the interests of California and Maryland in the enforceability of Hunter's noncompetition covenant in the circumstances of this case and have concluded that California's interests should prevail. For similar reasons, we conclude California law may be applied to AGI's claim of unfair competition and that, thus, the trial court did not err in finding Hunter's use of a covenant not to compete in violation of section 16600 to be a violation of section 17200 as well.[22]

---

[21]Hunter quotes language from *Californians for Population Stabilization* v. *Hewlett-Packard Co., supra,* 58 Cal.App.4th 273, for the proposition that "The mere fact that certain provisions were unenforceable in California does not render the use of the documents an unfair business practice." (58 Cal.App.4th at p. 293.) This passage appears, at first blush, to support a conclusion that Hunter's use of covenants not to compete does not violate section 17200. Upon closer examination, however, the Sixth Appellate District's holding follows from the fact that the plaintiff failed to prove any of its claims that the contractual provisions at issue were "unlawful" under various California statutes, including section 16600, leaving it with only the "unfair" business practice prong of section 17200 as a basis for obtaining relief. (58 Cal.App.4th at pp. 287-293.) The instant challenge is different in that AGI is claiming, and proved to the satisfaction of the trial court, that Hunter's covenant not to compete (as it was used against Pike and AGI) is not simply "unfair" or "unenforceable" but, rather, violates a specific statute (§ 16600) and is, thus, to that extent "unlawful" under section 17200. Of course, the *Californians for Population Stabilization* court also stated, in dictum, that it is questionable whether violations of the statutes at issue there (§ 16600; Civ. Code, §§ 1670.5, 1671) can support a cause of action under 17200 for an "unlawful" business practice. (58 Cal.App.4th at p. 287.) As with most dicta, this statement is deserving of little or no weight in our analysis.

[22]We need not decide, and express no opinion on, two additional issues raised by Hunter in its briefs. We do not construe the trial court's judgment as including declaratory relief with respect to either the "full faith and credit" owed to any judgment Hunter "might obtain"

## III. CONCLUSION

The judgment shall be modified to delete those portions relating to Pike's individual claims for relief. As thus modified, the judgment will be affirmed. The parties shall bear their own costs.

Parrilli, J., and Walker, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 13, 1998.

---

against AGI or Pike, or the existence of a "privilege" under California law to disregard Hunter's covenant not to compete. AGI and Pike have conceded as much.