105 Cal.Rptr.2d 265 (2001)
87 Cal.App.4th 1235
ADVANCED BIONICS CORPORATION, et al., Plaintiffs and Respondents,
v.
MEDTRONIC, INC., Defendant and Appellant.
Medtronic, Inc., Petitioner,
v.
The Superior Court of Los Angeles County, Respondent;
Advanced Bionics Corporation, et al. Real Parties in Interest.
Nos. B144465, B144920.
Court of Appeal, Second District.
March 22, 2001.
As Modified on Denial of Rehearing April 18, 2001.
Review Granted June 13, 2001.
*267 Robins, Kaplan, Miller & Ciresi, Roman M. Silberfeld, Ernest I. Reveal, Bernice Conn and Susan L. Dunbar, for Defendant, Appellant and Petitioner.
Loeb & Loeb, Fred B. Griffin, Todd M. Malynn; Feldman Gale & Weber, Michael J. Weber, James A. Gale; Greines, Martin, Stein & Richland and Robin Meadow, for Plaintiffs, Respondents and Real Parties in Interest.
No appearance for Respondent Superior Court.
*266 MIRIAM A. VOGEL, J.
A Minnesota employee signed a covenant not to compete with his Minnesota employer. A few years later, the employee resigned, moved to California, and went to work for a California employer. On the day he started his new job, the employee and his California employer *268 sued the Minnesota employer for a declaration that the covenant not to compete is unenforceable in California. The next day, the Minnesota employer filed suit in Minnesota and obtained restraining orders to prevent the employee and his California employer from pursuing the first-filed California action. Ultimately, both courts issued restraining orders. On this appeal from the Los Angeles Superior Court's restraining orders, the Minnesota employer contends that, as a matter of comity, the California court should have deferred to the Minnesota court. We conclude that the Minnesota law governing covenants not to compete is contrary to a fundamental policy of California, that California has a materially greater interest than Minnesota in enforcing its law, and that California law will therefore determine the rights of the parties. For those reasonsand because the California action was filed firstwe conclude that this dispute should be litigated in California. The restraining orders are affirmed (and a related petition for a writ of mandate is denied as moot).

FACTS
In 1995, in Minnesota, Mark Stultz was hired by Medtronic, Inc. to work in its marketing department. Medtronic, a Minnesota corporation with headquarters in Minnesota, manufactures implantable neurostimulation devices used to treat chronic pain. In recognition of "the importance to Medtronic of protecting Medtronic's rights with respect to business information and inventions without unduly impairing [Stultz's] ability to pursue his[ ] profession," Stultz and Medtronic (by its president) signed a "Medtronic Employee Agreement" with the following covenant not to compete:
"Employee agrees that for two ... years after termination of employment he[ ] will not directly or indirectly render services (including services in research) to any person or entity in connection with the design, development, manufacture, marketing, or sale of a Competitive Product that is sold or intended for use or sale in any geographic area in which Medtronic actively markets a Medtronic Product or intends to actively market a Medtronic Product of the same general type or function. It is expressly understood that the employee is free to work for a competitor of Medtronic provided that such employment does not include any responsibilities for, or in connection with, a Competitive Product as defined in this Agreement for the two year period of the restriction. [¶] If the Employee's, only responsibilities for Medtronic during the last two years of employment have been in a field sales or field sales management capacity, this provision shall only prohibit for one ... year the rendition of services in connection with the sale of a Competitive Product to persons or entities located in any sales territory the Employee covered or supervised for Medtronic during the last year of employment." The agreement defines a "competitive product" as one "of the same general type" as the Medtronic product on which the employee worked.
The agreement also included this provision: "The validity, enforceability, construction and interpretation of this Agreement shall be governed by the laws of the state in which the Employee was last employed by Medtronic." For the duration of his employment at Medtronic, Stultz worked in Minnesota.
On June 7, 2000, Stultz quit his job at Medtronic and, in California, went to work for Advanced Bionics Corporation. On the same day, in the Los Angeles Superior Court, Stultz and Advanced Bionics sued Medtronic for declaratory relief, alleging that Medtronic's covenant not to compete is contrary to California's public policy and that the choice-of-law provision in Stultz's employment agreement is also unenforceable. Medtronics was served the same day. Two days later, Stultz and Advanced Bionics filed a first amended complaint in which they added claims charging Medtronic with unfair competition and unfair business practices.
*269 On June 8, in Los Angeles, Stultz and Advanced Bionics (after contacting Medtronic's lawyer that morning) applied for a temporary restraining order to prevent Medtronic from "taking any action" (other than in the California case) to enforce its covenant not to compete or to otherwise restrain Stultz from working for Advanced Bionics. The trial court put the matter over until the next day, rejecting concerns expressed by the lawyer representing Stultz and Advanced Bionics about Medtronic's "well-known race-to-court practice" in Minnesota.[1] To avoid the hearing on the restraining order, Medtronic removed the case to federal court (claiming diversity of citizenship based upon Stultz's move to California).
On June 9, in Minnesota, Medtronic sued Stultz and Advanced Bionics for injunctive relief (to prevent Stultz from violating the covenant not to compete) and for damages (from Advanced Bionics on the ground that it had "wrongly induced" Stultz to leave his employment at Medtronic). On the same day, in the Minnesota action, the court signed a temporary restraining order enjoining Stultz and Advanced Bionics from taking any action in any other court that would interfere with the Minnesota action, and prohibiting Advanced Bionics from employing Stultz in any way that would violate the terms of the covenant not to compete. The Minnesota court set a date for a hearing (June 21) at which it would decide whether to issue a "temporary injunction" (the equivalent of our preliminary injunction).[2]
On June 16, in Los Angeles, the federal district court (on a motion brought by Stultz and Advanced Bionics) remanded the California action to the Los Angeles Superior Court.
On June 21, in Minnesota, the scheduled hearing was held but no order was issued. On the same day, in Los Angeles, Medtronic filed a motion to dismiss or stay this action pending resolution of Medtronic's Minnesota action.
On July 21, in Los Angeles, the court denied Medtronic's motion for a stay, finding that "the interests of substantial justice will not be served by staying or dismissing this action." On its own motion, the court set October 16, 2000, as the date for trial of the declaratory relief cause of action. The court said the remaining claims would be tried in May 2001.
On August 3, 2000, in Minnesota, the court issued a preliminary injunction along the same lines as the temporary restraining orderexcept that it did not include the provision restraining Stultz's or Advanced Bionics's pursuit of other litigation. The temporary restraining order was dissolved. In Minnesota, Stultz and Advanced Bionics appealed from that order.
On August 8, in Los Angeles, Stultz and Advanced Bionics applied ex parte (and without notice) to the court for temporary restraining orders to prohibit Medtronic from taking any further steps in the Minnesota action. The application was granted, the court finding there was a "substantial chance" that, given notice, Medtronics would "go to the Minnesota court [and] attempt to undercut" the California court's jurisdiction. Medtronics was restrained from "taking any action whatsoever, other than in this Court, to enforce [its covenant not to compete] against ... *270 Stultz or to otherwise restrain ... Stultz from working for Advanced Bionics in California, including but not limited to making any appearance, filing any paper, participating in any proceeding, posting any bond, or taking any other action in the second-filed [Minnesota] lawsuit...."[3] As noted in the preceding paragraph, the Minnesota restraining order did not at this time enjoin Stultz and Advanced Bionics from pursuing the California action. This restraining order is the subject of Medtronic's appeal.
On August 9, in Los Angeles, Medtronic answered the first amended complaint.
On August 11, in Minnesota, Medtronic told the court about the restraining order issued by the Los Angeles Superior Court, and asked the Minnesota court for "guidance" about how to proceed with the Minnesota action.
On August 15, in Los Angeles, Stultz and Advanced Bionics applied ex parte for an order setting their unfair competition claims for trial at the same time as their declaratory relief claim (October 16).
On August 16, in Minnesota, the court amended its August 3 preliminary injunction (purportedly nunc pro tunc), noted that it had "failed to incorporate language enjoining [Stultz and Advanced Bionics] from obtaining relief in another court that would effectively stay or limit [the Minnesota action]," added a provision to enjoin Stultz and Advanced Bionics "from seeking any interim or temporary relief from any other court that would effectively stay, limit or restrain [the Minnesota] action, in whole or in part, or restrict Medtronic from prosecuting its claims in [the Minnesota] action," and ordered Stultz and Advanced Bionics to "move to vacate and rescind the August 8, 2000 temporary restraining order obtained in the California action and [to] refrain from seeking any relief in that action that stays or restrains [the Minnesota] action in any way." In Minnesota, Stultz and Advanced Bionics appealed from that order.
On August 21, in Los Angeles, Stultz and Advanced Bionics told the court about the Minnesota court's order directing them to ask the Los Angeles Superior Court to vacate its injunction. The Los Angeles Superior Court refused to vacate its order.
On August 22, in Minnesota, a pretrial conference was held. Stultz and Advanced Bionics appeared but Medtronic, claiming it was "prohibited from appearing by the California [restraining order]," did not appearbut "[c]ounsel for Medtronic were present in the gallery to observe the proceedings." According to Medtronic's opening brief on appeal, "[t]he Minnesota judge called the California judge during a recess in the August 22 pretrial conference. The California judge agreed to lift this [restraining order] temporarily, for the limited purpose of allowing Medtronic and its counsel to participate in settlement discussions, presided over by the Minnesota court.... The parties discussed settlement, both before the Minnesota judge and, later, before a California judge, but those talks proved unsuccessful."
On August 25, in Minnesota, the courtbased on the Los Angeles Superior Court's refusal to vacate its restraining orderamended the Minnesota preliminary injunction so that it prohibits Stultz and Advanced Bionics from seeking any "permanent" relief to stay or limit or restrain the Minnesota action.
On September 25, in Los Angeles, Stultz and Advanced Bionics stipulated that Medtronic could file a first amended answer adding a new affirmative defense (in essence, a claim that the covenant not to compete is enforceable because it is necessary to protect Medtronic's trade secrets).
*271 On October 10, in Los Angeles, Medtronic applied ex parte for an order shortening the time within which it could serve and file a motion to continue the October 16 trial date. The trial court denied the ex parte application, thereby necessarily denying the motion for a continuance.
On October 12, 2000, in Los Angeles, Medtronic filed a petition for a writ of mandate in which it asked us to compel the Los Angeles Superior Court to continue the trial to May 2001. We stayed the trial (and later stayed all proceedings), issued an order to show cause, and set the matter for hearing. Between then and now, both the appeal and the writ petition have been fully briefedand we therefore consider them together.

DISCUSSION
Medtronic contends the trial court abused its discretion and violated long-standing principles of comity when it issued its restraining order, and with great indignation attacks the Los Angeles Superior Court's refusal to defer to the Minnesota court. In a somewhat abstract separate claim of error, Medtronic insists there was no factual or legal basis for the restraining order. But Medtronic's opening brief never mentions the choice-of-law clause (or its enforceability), or the substance of the covenant not to compete (or its enforceability in Minnesota or California), or the balancing that must be done when any injunction is issued. As will appear, we do address those issues, and we conclude the restraining orders were properly issued. (U.C. Nuclear Weapons Labs Conversion Project v. Lawrence Livermore Laboratory (1984) 154 Cal.App.3d 1157, 1160, 201 Cal.Rptr. 837; Continental Baking Co. v. Katz (1968) 68 Cal.2d 512, 527-528, 67 Cal.Rptr. 761, 439 P.2d 889.)

A.
Where two California courts have concurrent jurisdiction, the first to assume jurisdiction over a particular subject matter of a particular controversy takes it exclusively, and the other court should not thereafter assert control over that subject matterbut the second court's failure to defer to the first is not a jurisdictional error in the sense that it renders further proceedings void. (County of San Diego v. State of California (1997) 15 Cal.4th 68, 88, 61 Cal.Rptr.2d 134, 931 P.2d 312; People ex rel. Garamendi v. American Autoplan, Inc. (1993) 20 Cal.App.4th 760, 772, 25 Cal.Rptr.2d 192; Plant Insulation Co. v. Fibreboard Corp. (1990) 224 Cal.App.3d 781, 786-787, 274 Cal.Rptr. 147.)
Where two courts in different states have concurrent jurisdiction, the result is the same but the analysis is framed in the language of comity and judicial discretion.[4]Simmons v. Superior Court (1950) 96 Cal.App.2d 119, 214 P.2d 844, makes the point. In Simmons, a wife initiated divorce proceedings in Texas. Five days later, the husband initiated divorce proceedings in the Los Angeles Superior Court. When the wife asked the superior court to stay further proceedings until the Texas action was resolved, the court declined. Division Three of our *272 Court said the stay should have been granted, explaining the rule this way: "`While it is unquestionably the law that the pendency of a prior action in another state between the same parties, involving the same cause of action, does not entitle a party as a matter of right to an abatement of a second suit, we think it is equally true that it is within the discretion of the court in which the second action is pending to stay the same until after the decision of the first ..., and that the principle of comity between the states calls for the refusal on the part of the courts of this state to proceed to a decision before the termination of the prior action(Id. at pp. 123-124, 214 P.2d 844.)
This is the way Simmons explains the reasons for the rule: "The rule which forbids a later action in the same state between the same parties involving the same subject matter rests upon principles of wisdom and justice, to prevent vexation, oppression and harassment, to prevent unnecessary litigation, to prevent a multiplicity of suits,in short, to prevent two actions between the same parties involving the same subject matter from proceeding independently of each other. We think there is no distinction in reason or difference in principle between a case where a later action between the same parties involving the same subject matter is commenced in the same state and a case where a later action between the same parties involving the same subject matter is commenced in another state. If proceedings should be stayed in the first case mentioned, it is in order to avoid a multiplicity of suits and prevent vexatious litigation, conflicting judgments, confusion and unseemly controversy between litigants and courts. Any and all of this may occur where the later action is commenced in another state, as well as where it is commenced in the same state." (Simmons v. Superior Court, supra, 96 Cal.App.2d at pp. 124-125, 214 P.2d 844.)
Although the reported California decisions all involve situations where the California case was the later filed action (Simmons v. Superior Court, supra, 96 Cal. App.2d 119, 214 P.2d 844; Schuster v. Superior Court (1929) 98 Cal.App. 619, 277 P. 509; Engle v. Superior Court (1956) 140 Cal.App.2d 71, 294 P.2d 1026), we believe the same rules must be applied where, as here, the California case is the first-filed actiona conclusion bolstered by the fact that Minnesota's courts would most probably reach the same result. (First State Ins. v. Mn. Min. and Mfg. (Minn.App. 1995) 535 N.W.2d 684, 687 ["It has long been the law in Minnesota that a court may enjoin a party over whom it has in personam jurisdiction from pursuing similar litigation in another court"]; cf. State v. District Court, Fourth Judicial Dist. (1935) 195 Minn. 169, 262 N.W. 155, 157 ["`Where two actions between the same parties, on the same subj
ect, and to test the same rights, are brought in different courts having concurrent jurisdiction, the court which first acquires jurisdiction ... retains its jurisdiction and may dispose of the whole controversy, and no court of coordinate power is at liberty to interfere with its action'"].)

B.
In the case before us, the first case filed was filed in California. Medtronic contends that fact is not dispositive, that the trial court should have recognized Stultz's and Advanced Bionics's "rush to court" as "preemptive forum shopping," and that the trial court should have deferred to the Minnesota court by refusing to issue a restraining order. We disagree.
Deference to the Minnesota court would only have been appropriate if, in an exercise of the trial court's sound discretion, there was some reason for California to refuse to proceed in the first filed suit. (Thomson v. Continental Ins. Co. (1967) 66 Cal.2d 738, 746, `59 Cal.Rptr. 101, 427 P.2d 765.) In Thomson, an insured's action against his insurer alleging a failure to pay a claim arising out of damage to Texas real property, the insured first sued in federal *273 District Court in California. On the insurer's motion for change of venue, that action was transferred to a federal District Court in Texas. The plaintiff then filed a substantially identical complaint in the Los Angeles Superior Court. On the insurer's motion for a change of venue on the basis of forum non conveniens, the superior court dismissed the second filed action. The Supreme Court reversed, explaining that the "pendency of the nearly identical action in federal court in Texas has no bearing on the forum non conveniens question presented here. Such a pending action may be grounds for a stay of the proceedings in California, but not for a dismissal." (Id, at pp. 741, 746, 59 Cal. Rptr. 101, 427 P.2d 765.)
In that context, the Court explained that the decision whether to grant "a stay in a case where the issues in two actions are substantially identical ... is a matter addressed to the sound discretion of the trial court. 'In exercising its discretion the court should consider the importance of discouraging multiple litigation designed solely to harass an adverse party, and of avoiding unseemly conflicts with the courts of other jurisdictions. It should also consider whether the rights of the parties can best be determined by the court of the other jurisdiction because of the nature of the subject matter, the availability of witnesses, or the stage to which the proceedings in the other court have already advanced.' [Citations.]" (Thomson v. Continental Ins. Co., supra, 66 Cal.2d at pp. 746-747, 59 Cal.Rptr. 101, 427 P.2d 765, italics added; see also Farmland Irrigation Co. v. Dopplmaier (1957) 48 Cal.2d 208, 215, 308 P.2d 732.)
Although we are not concerned with the issuance of a stay order, we think the same factors govern the issue before uswhether, as a matter of comity, the California court should defer to the Minnesota courtand we therefore consider these factors seriatim.

C.
Implicit in the trial court's orders is a finding that the California suit was filed for a proper purpose, not to harass an adverse party. Although Medtronic offered evidence to the contrary, substantial evidence supports the trial court's finding and that finding is binding on this appeal. (Nestle v. City of Santa Monica (1972) 6 Cal.3d 920, 925-926, 101 Cal.Rptr. 568, 496 P.2d 480.)
Due to a "family emergency," Stultz was absent from work on June 5 and 6, 2000. He resigned on June 7, by a written notice delivered to Medtronic at about 4:00 or 5:00 p.m. Eastern Standard Time. Later in the day on June 7, this lawsuit was filed in California, alleging that Stultz had resigned from Medtronic and accepted a position with Advanced Bionics. This is the substance of Medtronic's claim that Stultz and Advanced Bionics "secretly prepared their litigation papers" while Stultz was still employed by Medtronic and "orchestrated his resignation to occur at the end of the business day in Minnesota, but with time left to file in California."
But the evidence presented by Stultz and Advanced Bionics suggests otherwise. In support of their June 8 application in which they asked for a temporary restraining order on only four hours' notice to Medtronics, one of their lawyers (Todd M. Malynn) submitted a declaration explaining his concern that, had he given advance notice of his intent to apply for a restraining order, "Medtronic more than likely would have immediately filed a lawsuit in Minnesota against [Stultz and Advanced Bionics], and sought an injunction under Minnesota law barring [them] from seeking relief in [the Los Angeles Superior Court]." This is the stated reason for his concern:
"I have been involved in other litigation between potential competitors of Medtronic and Advanced Bionics, which concerned the right of sales representatives of pacemakers to move between competitors in the industry. [In a footnote, six cases are *274 identified by name and case number.] In each of these actions, a California-based employer had hired a former-employee of a Minnesota-based competitor. Notwithstanding the fact that the Minnesota-based employer had actual knowledge that a lawsuit had been filed in California to determine the right of the former-employee to work for the California-based competitor, the Minnesota-based employer filed an action in Minnesota and sought and obtained an `emergency' [restraining order], purporting to enjoin the plaintiffs from seeking relief in California. Eventually, the Ninth Circuit had to consider an appeal as to whether the court in California properly issued a[n] anti-injunction injunction, barring enforcement of the Minnesota court's [restraining order], enjoining further proceedings in the Minnesota court, and enjoining the defendants from trying to further interfere with the California court's jurisdiction. The Ninth Circuit affirmed. Among other things, the Ninth Circuit considered the fact that the plaintiffs could have avoided this circumstance if, when they filed their lawsuit, they had simply moved for a temporary restraining order barring the filing of any other action in any other forum." [5]
Medtronic's subsequent conduct supports the trial court's decision to reject its interpretation of Stultz's and Advanced Bionics's motives. When Medtronic was given the required notice of Stultz's and Bionics's application for a restraining order, Medtronic appeared in court (on June 9) with a notice that it was removing the case to federal court, thereby depriving the superior court of jurisdiction. On the same day, Medtronic filed its own action in Minnesota and obtained restraining orders that prohibited Stultz and Advanced Bionics from litigating their dispute in California.
This factor was properly decided in favor of Stultz and Advanced Bionics.

D.
The remaining factorswhether the trial court's decision was necessary to avoid an unseemly conflict between the two courts and whether, because of the subject matter of this dispute, the rights of the parties can best be determined by a California courtcan best be discussed in tandem.[6] As we will explain, fundamental public policy issues affecting a California employee (Stultz) and a California employer (Advanced Bionics) will have to be decided in this case, issues best decided by a California court.

1.
In California, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." (Bus. & Prof. Code, § 16600.) [7] That the statute means *275 what it says, and that it has to be interpreted according to California law, is clear.
In Application Group, Inc. v. Hunter Group, Inc. (1998) 61 Cal.App.4th 881, 72 Cal.Rptr.2d 73, AGI (a California corporation) hired Dianne Pike (a non-resident consultant) away from Hunter (a Maryland corporation with branch offices in several states, including California). While working for Hunter, Pike had signed an employment agreement that included a covenant not to compete and a Maryland choice-of-law clause. (Id. at pp. 885-888, 72 Cal.Rptr.2d 73.) In 1992 or 1993, Hunter sued Pike and AGI in Maryland, alleging that Pike had breached her covenant not to compete and that AGI had unlawfully interfered with Hunter's contract with Pike. That case was tried in 1994 and resulted in a judgment in favor of Pike and AGI (because Hunter failed to present any evidence of damages). Meanwhile, in April 1993, AGI and Pike had sued Hunter for declaratory relief in California, alleging that the covenant not to compete was unenforceable. On Hunter's motion, the California action had been stayed pending completion of the Maryland suit; the stay was lifted after judgment was entered by the Maryland court. (Id. at pp. 887-888, 72 Cal.Rptr.2d 73.) On appeal, Hunter conceded that California law invalidated its covenant not to compete as to California residents but claimed that, under Maryland law, the covenant was enforceable against nonresident consultants hired for employment in Californiaand that Maryland law ought to be applied to Pike. (Id. at p. 895, 72 Cal. Rptr.2d 73.)
Application Group reminds us that the enforceability of an arm's length contractual choice-of-law provision is to be analyzed as provided in section 187 of the Restatement Second of Conflicts of Law: "`[T]he proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. ...If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California .... If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue...." (Rest, § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstances we will decline to enforce a law contrary to this state's fundamental policy.'" (Application Group, Inc. v. Hunter Group, Inc., supra, 61 Cal.App.4th at p. 897, 72 Cal. Rptr.2d 73, quoting Nedlloyd Lines B.V. v. Superior Court (1992) 3 Cal.4th 459, 466, 11 Cal.Rptr.2d 330, 834 P.2d 1148, most italics added.)
Nedlloyd does not tell us how to apply the Restatement rule in a case in which the interests of the chosen state clash with a policy declared by California to be "fundamental." (Nedlloyd Lines B.V. v. Superior Court, supra, 3 Cal.4th at p. 466, fn. 6, 11 Cal.Rptr.2d 330, 834 P.2d 1148.) But that question is answered by Application Group. In Application Group as in our case, the chosen state had a "substantial relationship" to the parties and their transaction; there, as here, there was a "reasonable basis" for the parties' contractual choice-of-law provision; there, as here, both states were "potentially concerned" states with "diametrically opposed laws regarding the enforceability of [a covenant *276 not to compete]." (Application Group, Inc. v. Hunter Group, Inc., supra, 61 Cal.App.4th at p. 899, 72 Cal.Rptr.2d 73.) There, as here, "each state purports to have significant interests in having its law applied." (Id. at p. 900, 72 Cal.Rptr.2d 73.) The questions there were (1) whether Maryland's law is contrary to a fundamental policy of California and, if so, (2) which state has a materially greater interest in the determination of the issue and (3) which state's interests would be more seriously impaired if its policy were subordinated to the policy of the other state. (Ibid. ) Since the question before us is identical, we paraphrase Application Group to fit our names and places.

2.
"[S]ection 16600 reflects a `strong public policy' of the State of California. [Citations.].... `California courts have consistently declared this provision an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice. Section 16600 has specifically been held to invalidate employment contracts which prohibit an employee from working for a competitor when the employment has terminated, unless necessary to protect the employer's trade secrets. [Citation.] The corollary to this proposition is that [a competitor] may solicit another's employees if they do not use unlawful means or engage in acts of unfair competition.' [Citation.] ... `The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change.' [Citation.] It follows that California has a strong interest in protecting the freedom of movement of persons whom California-based employers (such as [Advanced Bionics] ) wish to employ to provide services in California, regardless of the person's state of residence or precise degree of involvement in California projects, and we see no reason why these employees' interests should not be 'deemed paramount to the competitive business interests' of out-of-state as well as in-state employers. [Citation.]
"To the extent it is invoked by a California employer to protect itself from `unfair competition,' moreover, section 16600 ... is all the more important as a statement of California public policy which ensures that California employers will be able to compete effectively for the most talented, skilled employees in their industries, wherever they may reside. In this day and agewith the advent of computer technology and the concomitant ability of many types of employees in many industries to work from their homes, or to `telecommute' to work from anywhere a telephone link reachesan employee need not reside in the same city, county, or state in which the employer can be said to physically reside. California employers in such sectors of the economy have a strong and legitimate interest in having broad freedom to choose from a much larger, indeed a `national,' applicant pool in order to maximize the quality of the product or services they provide, as well as the reach of their 'market.' California has a correlative interest in protecting its employers and their employees from anticompetitive conduct by out-of-state employers such as [Medtronic]including litigation based on a covenant not to compete to which the California employer is not a partywho would interfere with or strict these freedoms.
"[Medtronic] suggests, however, that [Minnesota] has an equally strong public policy favoring the use and enforcement of its noncompetition covenants, insofar as they serve the interests of [Minnesota] employers in preventing recruitment of employees who provide `unique services,' and the misuse of trade secrets [and other confidential information. (Bennett v. Storz Broadcasting Co. (1965) 270 Minn. 525, 134 N.W.2d 892, 899-900.) ] However, there is nothing in the record of this case to support *277 a finding that failure to enforce [Medtronic's] noncompetition covenant would significantly impair [its] asserted interests.... There is ... no showing that [Stultz, since resigning from Medtronic, has worked on products that compete with the products he worked on for Medtronic]....
"We are, therefore, convinced that California has a materially greater interest than does [Minnesota] in the application of its law to the parties' dispute, and that California's interests would be more seriously impaired if its policy were subordinated to the policy of [Minnesota]. Accordingly, the trial court [would] not err [if] it decline[s] to enforce the contractual conflict of law provision in [Stultz's] employment agreement[ ]. To [do] so would [be] to allow an out-of-state employer/competitor to limit employment and business opportunities in California. As the Nedlloyd court held, California courts are not bound to enforce a contractual conflict of law provision which would thus be `contrary to this state's fundamental policy.' [Citations.]" Application Group, Inc. v. Hunter Group, Inc., supra, 61 Cal.App.4th at pp. 900-902, 72 Cal.Rptr.2d 73.)[8]

E.
We reject Medtronic's suggestion that the restraining order impermissibly restricts its right to petition for redress and that it somehow immunizes Stultz and Advanced Bionics from liability for damages they might owe to Medtronic. As we noted in Hi-Top Steel Corp. v. `Lehrer (1994) 24 Cal.App.4th 570, 578, 29 Cal.Rptr.2d 646, not every claim that an activity has been undertaken to influence government is actually an exercise of the constitutional right to petition for redress. At times, activity disguised as petitioning is simply an effort to interfere directly with a competitor. In that case, as here, it is not a protected activity. Of course, Medtronic simply ignores the fact that Medtronic's right to petition, if that's what it is, has been restricted only insofar as its out-of-state efforts are concerned. Medtronic is free to assert its claims against Stultz and Advanced Bionics in California.[9]

F.
We are satisfied that the restraining orders issued by the Los Angeles Superior Court are necessary and appropriate to protect the interests of Stultz and Advanced Bionics pending final disposition of this actionand that is the only issue raised on Medtronic's appeal.
Which brings us to Medtronic's petition for a writ of mandate challenging the trial court's refusal to continue the trial that was set for last October. At this point, there is no need to consider whether the trial court's refusal to continue the matter was an abuse of discretion. Although these proceedings have been stayed pending our resolution of the appeal, the views expressed in this opinion will no doubt affect the manner in which this case is tried. For that reason, we assume the trial court, with input from the parties, will want to reevaluate the pleadings (and whether amendment, if requested by any party, would be appropriate), the scope of discovery yet to be completed, and the issues that are to be tried (and the order in which they ought to be addressed). For these reasons, the petition will be denied as moot.

*278 DISPOSITION
The restraining order is affirmed. The petition is denied. Our stay order is dissolved, effective as of the date this opinion becomes final. Stultz and Advanced Bionics are entitled to their costs of appeal and of the writ proceedings.
ORTEGA, Acting P.J., and MALLANO, J., concur.
NOTES
[1] According to Stultz and Advanced Bionics, Minnesota employers in general, and Medtronic specifically, regularly file actions in Minnesota to obtain restraining orders to stop litigation that they know is already pending in California. According to Medtronic, such actions are appropriate to prevent the "forum shopping strategy" demonstrated by Stultz and Advanced Bionics in this case.
[2] The Minnesota temporary restraining order prohibited Stultz and Advanced Bionics from "making any motion or taking any action or obtaining any order or direction from any court that prevent[s] or interfered] in any way with [the Minnesota court] determining whether it should determine all or any part of the claims alleged in this lawsuit, including claims for temporary, preliminary or permanent relief."
[3] By order to show cause, a hearing was set to determine whether a preliminary injunction should issue, but that matter was later taken off calendar with the understanding that the temporary restraining order would remain in effect.
[4] This is the concept of comity: "`It is a conceded principle, that the laws of a state have no force, proprio vigore, beyond its territorial limits, but the laws of one state are frequently permitted by the courtesy of another to operate in the latter for the promotion of justice, where neither that state nor its citizens will suffer any inconvenience from the application of the foreign law. This courtesy, or comity, is established, not only from motives of respect for the laws and institutions of the foreign countries, but from considerations of mutual utility and advantage.' . . . `The mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the Constitution forbids.'" (Estate of Lund (1945) 26 Cal.2d 472, 489, 159 P.2d 643; see also Wong v. Tenneco, Inc. (1985) 39 Cal.3d 126, 134, 216 Cal.Rptr. 412, 702 P.2d 570 [the comity doctrine is based on a respect for the sovereignty of other states and countries, considerations of mutual utility and advantage, and business and social necessity].)
[5] Medtronic says there is a seventh suit in which the lawyers representing Stultz and Advanced Bionics were criticized by a federal district court judge (in Minnesota) for their purported forum shopping. Stultz and Advanced Bionics concede as much but explain that, of the seven similar suits, six were litigated in California.
[6] The factors discussed in the text are dispositive in this case and we therefore do not consider the availability of witnesses or the stage of the Minnesota proceedings.
[7] Undesignated section references are to the Business and Professions Code. There are a few exceptions to the rule of section 16600 but they do not apply in this case. (See §§ 16601 [in general terms, a person who sells the goodwill of a business, a shareholder who sells all his shares in a corporation, and a shareholder who sells all or substantially all of its operating assets together with the corporation's goodwill may agree with the buyer to refrain from competing in a limited geographical area]; 16602 [in anticipation of the dissolution of a partnership or similar future event, a partner may agree that, upon the occurrence of the anticipated event, he will not compete within a specified geographical area]; 16602.5 [in anticipation of dissolution or sale of a member's interest, a member of a limited liability company may agree that, upon occurrence of the anticipated event, he will not compete in a limited geographical area].)
[8] Our discussion of section 16600 in the context of the choice-of-law issue makes it unnecessary to separately consider the probability that Stultz and Advanced Bionics will prevail in this action. We emphasize, however, that the merits of this case remain to be decided at trial. Our views in this opinion must be read in contextthat is, for purposes of a temporary restraining order or preliminary injunction, it appears reasonably probable that Stultz and Advanced Bionics will succeed in their efforts to have the covenant not to compete declared unenforceable.
[9] Our resolution of the issues discussed in the text makes it unnecessary to consider Medtronic's other issues.