**ARMORLITE LENS COMPANY, Inc.,**
**Plaintiff,**

v.

**Charles Douglas CAMPBELL et al.,**
**Defendants,**

**District Security, a corporation, Additional Defendant on Counterclaim.**

**Civ. No. 69–289.**

United States District Court,
S. D. California.

March 29, 1972.

274

Carl R. Brown, San Diego, Cal., Wm. Douglas Sellers, Pasadena, Cal., for plaintiff.

Allan Lasher, Beverly Hills, Cal., Paul B. Wells, San Diego, Cal., Hayden A. Carney, Pasadena, Cal., Sterling Hutcheson, San Diego, Cal., for defendants.

GORDON THOMPSON, Jr., District Judge.

The defendants have moved this Court for summary judgment as to the Third and Fourth Causes of Action of the Third Amended Complaint.

The Third Cause of Action alleges a breach of contract by defendant Campbell through 1) his failure to disclose to plaintiff, his former employer, his concept of an improved lens grinding machine for dies used in the plaintiff's business of manufacturing and marketing plastic ophthalmic lenses; 2) his refusal to execute application papers to enable plaintiff to file a patent application; and 3) his refusal to assign the development and the patent application to plaintiff.

The Fourth Cause of Action alleges a breach of contract by defendant Campbell similar to the Third Cause but relating instead to a mold for casting plastic lenses. Both Causes are based upon the third paragraph of a document executed by the parties entitled "Armorlite—Employee Agreement."[1]

Now having heard the arguments and having examined all the files, documents, and records herein, the cause having been submitted for decision, and the Court being fully advised in the premises, the Court renders its decision.

The defendants contend that paragraph 3 of the "Armorlite—Employee Agreement" is a covenant not to compete, and as such, restrains the defendants from engaging in a lawful profession, trade, or business. The defendants further contend that paragraph 3 of the Agreement is therefore void and unenforceable by reason of Section 16600 of the California Business and Professions Code, and also because it violates basic principles of public policy as set forth in GTI Corp. v. Calhoon, 309 F.Supp. 762, 772–773 (S.D.Ohio 1969).

1. "3. I agree promptly to disclose to an officer of the company, but to no other person, all new ideas and concepts I may have concerning the field of work of the company, or concerning its products, which ideas or concepts occur to me during the period of my employment, or within one (1) year after the termination thereof, and which might possibly be of value to the company for any reason, as for example and without limitation a new product, a new method or process for producing an old product, or an improvement in an old product, method or process, and I agree to execute any and all papers as requested by the company to evidence such ideas or concepts and to convey and assign full ownership rights therein to the company, and to enable the company to obtain patent protection thereon as it sees fit."

In Winston Research Corp. v. Minnesota Mining & Manufacturing Co., 350 F.2d 134 (9th Cir. 1965), the Ninth Circuit Court of Appeals upheld a lower court decision which had enforced an employment contract which required former California employees to assign to their former employer inventions conceived during employment and within one year of termination of employment which were "based upon" confidential information. The contract in question there required the employer to show when the inventions were conceived and that the inventions were based upon the employer's secrets or confidential information.

The "Armorlite—Employer Agreement" differs from that involved in the *Winston Research* case. The Armorlite agreement requires the former employee to assign and communicate all ideas and concepts whether they are based upon the employer's secrets or confidential information or not. As such, paragraph 3 of this Agreement exceeds the scope of protection afforded by the *Winston Research* case.

■ The conflicting policy considerations involved in balancing the interests of the employee against those of the employer are cogently set forth in the *Winston Research* case. 350 F.2d at 137–138. An agreement, such as the one involved in the instant case, which requires a former employee to turn over to his former employer *all* new ideas and concepts concerning the field of work or the products of the employer which occur to him within one year after the termination of his employment, is unnecessarily broad. The plaintiff has argued that this one-year period is necessary to "prevent cupidity upon the part of the employee who, upon recognizing he has hit upon a material improvement in the employer's field, resigns and after termination brings out his improvement." (Plaintiff's Memorandum In Opposition,

p. 10, lines 19–22.) The employment agreement in question, however, encompasses not only the dishonest employee with whom plaintiff is concerned, but also the honest employee who legitimately conceives an idea or improvement following his termination. To require a former employee, who has developed a new idea or concept following the termination of his employment and which is not based upon the employer's secrets or confidential information, to turn over the fruits of his labors to his former employer constitutes, in the opinion of this Court, an unreasonable restraint of trade.

■■ A review of the pleadings submitted by the plaintiff does not indicate that the Third and Fourth Causes of Action are directed at ideas and concepts which are not based upon the plaintiff's secrets or confidential information. Nevertheless, to the extent that paragraph 3 attempts to effect ideas and concepts not based upon the plaintiff's confidential information, that Agreement is void and unenforceable. However, based upon the *Winston Research* case, the Agreement is valid and enforceable as it relates to ideas and concepts which were based upon secrets or confidential information of the employer and which were conceived during employment or within one year of termination.

This Court is of the opinion that genuine issues of material fact still exist as to when the defendants conceived the ideas and concepts which led to the development of the machines and molds involved in the Third and Fourth Causes of Action, and whether those ideas were based upon secret or confidential information. Additionally, genuine issues of material fact exist as to which of the defendants was responsible for these developments.

Accordingly,

It is ordered that the defendants' motion for summary judgment is denied.