**APPLIED MATERIALS, INC., Plaintiff,**

v.

**ADVANCED MICRO–FABRICATION EQUIPMENT (SHANGHAI) CO., et al., Defendants.**

No. C 07–05248 JW.

United States District Court, N.D. California, San Jose Division.

May 20, 2009.

D. Stuart Bartow, Thomas F. Fitzpatrick, Goodwin Procter LLP, Menlo Park, CA, Daryl Stuart Bartow, Goodwin Procter, Palo Alto, CA, Douglas C. Doskocil, James C. Rehnquist, John C. Englander, Michael G. Strapp, Michelle R. Gonnam, Goodwin Procter LLP, Boston, MA, Gred H. Gardella, Fish and Richardson PC, Minneapolis, MN, for Plaintiff.

Harold J. McElhinny, Amir Weinberg, Morrison & Foerster LLP, San Francisco, CA, Brian Paul Gearing, Weil, Gotshal & Manges LLP, New York, NY, Colette R. Verkuil, Kenneth Alexander Kuwayti,

Marc David Peters, Paul Forrest Coyne, Morrison & Foerster LLP, Palo Alto, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS

JAMES WARE, District Judge.

### I. INTRODUCTION

Applied Materials, Inc. ("Applied" or "Plaintiff") brings this diversity action against Advanced Micro–Fabrication Equipment, Inc., and its China and Asia subsidiaries (collectively, "Defendants"), alleging, *inter alia*, misappropriation of trade secrets and unfair business practices. In response, Defendants assert counterclaims for declaratory relief and unfair business practices.

Presently before the Court is Defendants' Motion for Summary Judgment on Defendants' Counterclaims for Declaratory Relief and Unfair Competition.[1] (hereafter, "Motion," Docket Item No. 184.) The Court conducted a hearing on March 16, 2009. Based on the papers submitted to date and oral argument, the Court GRANTS Defendants' Motion for Summary Judgment.

### II. BACKGROUND

#### A. Undisputed Facts

Plaintiff is a California-based semiconductor manufacturing company with roughly 15,000 employees. (Declaration of Kenneth Kuwayti in Support of Defendants' Motion for Summary Judgment on Counterclaims, Ex. A at 230:16, hereafter, "Kuwayti Decl.," Docket Item No. 185.) Defendant AMEC China is a joint venture startup corporation, headquartered in Shanghai, China. Defendants AMEC, Inc. and AMEC Asia are related holding companies. (*See* Docket Item No. 128.)

This trade secret and unfair competition litigation between the parties relates to the fact that many of Defendants' employees previously worked for Plaintiff. In their capacity as Plaintiff's employees, each of these individuals signed Plaintiff's Employment Agreement ("Agreement"). (*See* Kuwayti Decl., Exs. H, I, J, K, L, M.) Although the language of the Agreement has changed in minor respects over time, each version of the Agreement contained an intellectual property assignment clause ("Assignment Clause"). (*See id.*, Exs. B, D, E, F, G.) For example, the 1997 version of the Assignment Clause states:

> In case any invention is described in a patent application or is disclosed to third parties by me within one (1) year after terminating my employment with APPLIED, it is to be presumed that the invention was conceived or made during the period of my employment for APPLIED, and the invention will be assigned to APPLIED as provided by this Agreement, provided it relates to my work with APPLIED or any of its subsidiaries.

(Kuwayti Decl., Ex. J ¶ 2(A)(iii).)

#### B. Procedural History

On October 15, 2007, Plaintiff filed this action seeking, *inter alia*, to enforce the Assignment Clause with respect to several of its former employees that had gone to work for Defendants.[2] In particular,

---

1. Also before the Court is Plaintiff's Motion to Strike the Declaration of Ronald Gilson in Support of Defendants' Motion for Summary Judgment. (*See* Docket Item Nos. 216, 221.) The Court did not rely on the Gilson Declaration in reaching its decision. Accordingly, Plaintiff's Motion to Strike is DENIED as moot.

2. Plaintiff alleges that its former employees Gerald Yin ("Yin"), Lee Luo ("Luo"), Jin–Yuan Chen ("Chen"), and Ryoji Tokada ("Tokada"), among other employees, are subject

Plaintiff alleges that inventions disclosed in several of Defendants' patent applications were conceived by Plaintiff's former employees within one year of the conclusion of their employment with Plaintiff. Accordingly, Plaintiff alleges that, pursuant to the Assignment Clause, the specified inventions presumptively belong to Plaintiff. (FAC ¶ 41.) In response, Defendants filed counterclaims, seeking a declaratory judgment that the Employment Agreements were unenforceable non-compete agreements under California law. (*See* Docket Item Nos. 129–30.) On June 19, 2008, the Court denied Plaintiff's motion to dismiss Defendants' counterclaims for declaratory relief and unfair competition, finding that Defendants had sufficiently alleged that the Assignment Clause violated California's statutory prohibition on non-compete agreements. (*See* Docket Item No. 164 at 5.)

Presently before the Court is Defendants' Motion for Summary Judgment on Defendants' Counterclaims for Declaratory Relief and Unfair Competition.

### III. STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion. . . ." *Id.* at 323, 106 S.Ct. 2548. "The judgment

sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The non-moving party "may not reply merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial." Fed. R.Civ.P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court draws all reasonable inferences in favor of the nonmoving party, including questions of credibility and of the weight that particular evidence is accorded. *See, e.g., Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 631 (9th Cir.1987). In such a case, summary judgment is inappropriate. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

to the Employment Agreement. (*See* First Amended Complaint ¶¶ 23–27, hereafter, "FAC," Docket Item No. 31.) Each of these individuals are alleged to have left Plaintiff's employ to work for Defendants. (*Id.* ¶¶ 31–36.)

## IV. DISCUSSION

Defendants move for summary judgment on their declaratory judgment and unfair competition claims, on the ground that the Employment Agreements are, as a matter of law, unenforceable non-compete agreements under California Business & Professions Code § 16600. (Motion at 11.) The Court first considers the nature of the restrictions imposed in the Employment Agreements, and then considers whether the Employment Agreements fall within the proscriptive ambit of California law.

### A. The Employment Agreements

Defendants contend that Plaintiff's Employment Agreements violate section 16600 because they unlawfully restrict employee mobility.[3] (Motion at 11.) In support of this position, Defendants assert that Plaintiff requires all former employees to assign any invention to Plaintiff for a one year period,[4] "even if the invention was the result of the independent research, development, and investment of the employee personally or his or her new employer." (Id.) Accordingly, it is Defendants' position that the Employment Agreements violate California public policy in that they "place an economic penalty on [Plaintiff's] employees for continuing to carry out work in their field." (Id.) Plaintiff responds that the Assignment Clause is an appropriate method of protecting its trade secrets, because it does not make assignment during the one-year period mandatory, but merely creates a rebuttable presumption that in-

ventions disclosed during that time period were conceived while the employee worked at Applied.[5]

■ To resolve this dispute, the Court first turns to the language of the Employment Agreement to determine the circumstances under which a former Applied employee's inventions are assignable pursuant to operation of the Assignment Clause.[6] The Assignment Clause provides:

In case any invention is described in a patent application or is disclosed to third parties by me within one (1) year after terminating my employment with AP-PLIED, it is to be presumed that the invention was conceived or made during the period of my employment for AP-PLIED, and the invention will be assigned to APPLIED as provided by this Agreement, provided it relates to my work with APPLIED or any of its subsidiaries.

(Kuwayti Decl., Ex. J ¶ 2(A)(iii).)

First, the Assignment Clause expressly refers to "*any* invention" described in a patent application or disclosed to third parties by the employee. Second, the Clause states that such invention "will be assigned" to Plaintiff. Finally, the Clause limits the scope of assignment to inventions that "relate[ ] to [an employee's] work with [Plaintiff] or any of its subsidiaries." The plain language of the Assignment Clause thus dictates that any invention described or disclosed within one year

---

**3.** The Court discusses section 16600 in detail, *infra*.

**4.** There is no dispute that the Assignment Clause is only triggered if the invention is related to an "employee's work with [Applied] or to the business of [Applied] or any of its subsidiaries." (Motion at 11 (quoting Kuwayti Decl., Ex. H § 2).)

**5.** (Plaintiff's Opposition to Defendants' Motion for Summary Judgment on Defendants'

Counterclaims for Declaratory Relief and Unfair Competition at 1, hereafter, "Opposition," Docket Item No. 213.)

**6.** "Under California law, the interpretation of a written contract is a matter of law for the court even though questions of fact are involved." *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1443 (9th Cir.1986).

of terminating an employment relationship with Plaintiff will be assigned to Plaintiff, provided the invention relates to the employee's work with Plaintiff.

Plaintiff, however, relies on the clause stating "it is to be presumed that the invention was conceived or made during the period of ... employment for [Plaintiff]." Plaintiff contends that the intervention of the term "presumed" indicates that the Assignment Clause is not mandatory, but rather creates a presumption that a former employee may rebut to retain ownership over inventions disclosed within one year of leaving Plaintiff's employment. Relying on the plain meaning of this phrase, the Court does not find that any rebuttable presumption is created. Instead, the Court reads this phrase to simply mean that Plaintiff will presume inventions disclosed during the one-year post-employment period were conceived during the period of employment. It then follows from the language of the Assignment Clause that, on the basis of this presumption, any such inventions will be assigned to Plaintiff.

Notably, there is no express creation of the rebuttable presumption for which Plaintiff advocates. The Assignment Clause merely refers to action that Plaintiff will take on the basis of a presumption that Plaintiff will make under a particular set of facts. It does not state that an employee may rebut this presumption, nor does it state how an employee would do so. Indeed, there is no mention that, under any set of circumstances, a former employee may retain ownership over the class of inventions described in the Assignment Clause.

In sum, the Court finds that the Assignment Clause contains mandatory language requiring former employees to assign any invention disclosed within one year of leaving Plaintiff's employ, provided the invention relates to work the employee performed for Plaintiff.

The Court next considers whether, as interpreted above, the Assignment Clause violates California's prohibition on employee non-compete agreements.

### B. Cal. Bus. & Prof.Code § 16600

In California, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof.Code § 16600. Section 16600 "invalidates provisions in employment contracts that prohibit 'an employee from working for a competitor after completion of his employment or imposing a penalty if he does so unless they are necessary to protect the employer's trade secrets.'" [7] *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 945–46, 81 Cal.Rptr.3d 282, 189 P.3d 285 (2008) (quoting *Muggill v. Reuben H. Donnelley Corp.*, 62 Cal.2d 239, 242, 42 Cal.Rptr. 107, 398 P.2d 147 (1965)). This provision "evinces a settled legislative policy in favor of open competition and employee mobility." *Id.* at 946, 81 Cal. Rptr.3d 282, 189 P.3d 285. California's restriction on non-competition agreements, however, does not extend to such agreements in the sale of corporations, partner-

---

7. Defendants suggest that the existence of a "trade secret exception" to section 16600 is a speculative proposition, which is at best the subject of academic debate. (Motion at 13–14.) The Court, however, finds that case law amply supports the existence of such an exception. *See Edwards*, 44 Cal.4th at 946, 81 Cal.Rptr.3d 282, 189 P.3d 285; *Bank of America, N.A. v. Lee*, No. CV 08–5546 CAS (JWJx), 2008 WL 4351348, at *6 (C.D.Cal. Sept. 22, 2008) (" 'trade secret exception' to § 16600 still applies. Nothing in *Edwards* is to the contrary."); *Latona v. Aetna U.S. Healthcare, Inc.*, 82 F.Supp.2d 1089, 1096 (C.D.Cal.1999) ("Employment restrictions that serve to protect a former employer's trade secrets, proprietary information, and confidential information are valid in California.").

ships, and limited liability corporations. *Id.* at 945–46, 81 Cal.Rptr.3d 282, 189 P.3d 285 (citing Cal. Bus. & Prof.Code §§ 16601, *et seq.*).

■■■ Assignment clauses function as unlawful non-compete provisions where they require an employee to assign an invention conceived after departing from an employer's service. *See Bd. of Tr. of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*, 487 F.Supp.2d 1099, 1116 (N.D.Cal.2007). Such clauses are enforceable, however, to the extent they "relate[ ] to ideas and concepts which were based upon secrets or confidential information of the employer. . . ." *Armorlite Lens Co. v. Campbell,* 340 F.Supp. 273, 275 (S.D.Cal. 1972).

In *Armorlite,* for example, an employer attempted to enforce an agreement that "require[d] the former employee to assign and communicate all ideas and concepts [for one year after terminating employment] whether they [were] based on the employer's secrets or confidential information or not." *Id.* The court reasoned that the agreement "encompasse[d] not only the dishonest employee . . . but also the honest employee who legitimately conceives an idea or improvement following . . . termination." *Id.* The court found that the agreement was an "unnecessarily broad" restraint on trade, and held that it was invalid under section 16600 to the extent it attempted to do more than protect the employer's confidential information. *Id.* In so deciding, the district court in *Armorlite* followed the Ninth Circuit's holding in *Winston Research Corp. v. Minnesota Mining & Mfg. Co.,* 350 F.2d 134 (9th Cir.1965). In *Winston Research,* the Ninth Circuit had upheld an assignment agreement that required employees to assign inventions "conceived within one year of termination of employment [which] were based upon confidential information." 350 F.2d at 145.

■■■ In this case, the Court has found that the Assignment Clause of the Employment Agreements requires that former Applied employees assign any invention disclosed within one year of terminating employment at Applied, provided the invention relates to work the employee performed for Applied. Unlike the assignment provision upheld in *Winston Research,* the scope of the Assignment Clause at issue here is not limited to inventions that are based on Plaintiff's confidential information. Rather, the Assignment Clause broadly targets any inventions "relate[d] to" former employees' "work" with Plaintiff. Such a sweeping provision conceivably encompasses both inventions based on confidential employer information and inventions relating to former Applied employees' work in the broad field of semiconductor research and manufacturing. Indeed, despite the fact that the Employment Agreements specifically define "confidential information," the Assignment Clause of those Agreements is in no way limited to situations in which former employee inventions are the product of Plaintiff's confidential information. (*See* Kuwayti Decl., Ex. J.)

The Court also finds that the Assignment Clause is deficient in that it is not limited to inventions conceived by former Applied employees while employed at Applied. Instead, the scope of the Assignment Clause includes any invention disclosed by former employees, regardless of when or where they were conceived. As such, the Court finds that the Clause "encompasses not only the dishonest employee . . . but also the honest employee who legitimately conceives an idea or improvement following . . . termination." *Armorlite,* 340 F.Supp. at 275.

Ultimately, the Court finds that the Assignment Clause is overly broad with re-

spect to both subject matter and temporal scope. Since the Court finds that the Assignment Clause touches post-employment inventions, regardless of when they were conceived or whether they were based on Applied's confidential information, the Clause necessarily operates as a restriction on employee mobility. Accordingly, the Court finds that the Assignment Clause is a post-employment penalty that violates California public policy as codified in Business & Professions Code § 16600.

■ In light of this finding, the Court must consider whether, as an unlawful non-compete provision, the Assignment Clause can be reformed or must be declared invalid and unenforceable. In general, "courts reform contracts only where the parties have made a mistake and not for the purpose of saving an illegal contract. Illegal contracts are void." *Kolani v. Gluska*, 64 Cal.App.4th 402, 407, 75 Cal. Rptr.2d 257 (1998) (internal citations omitted); *see also D'Sa v. Playhut*, 85 Cal. App.4th 927, 935, 102 Cal.Rptr.2d 495 (2000). In *Kolani*, the court found that an employer's non-compete agreement was void as an "outright prohibition on competition" because it was not narrowly tailored to protect confidential information and trade secrets. *Id.* The employer urged the court to apply a narrowing construction to the agreement, "by construing it as merely barring misappropriation of customer lists and trade secrets." *Id.* The court declined to apply the employer's proposed narrowing construction, on the ground that "the policy of Business and Professions Code section 16600 would be undermined by doing so." *Id.* at 408, 75 Cal.Rptr.2d 257. According to the *Kolani* court, the result would be that

> [e]mployers could insert broad, facially illegal covenants not to compete in their employment contracts. Many, perhaps most, employees would honor these clauses without consulting counsel or

challenging the clause in court, thus directly undermining the statutory policy favoring competition. Employers would have no disincentive to use the broad, illegal clauses if permitted to retreat to a narrow, lawful construction in the event of litigation.

*Id.*

In this case, the Court has found that the Assignment Clause operates as an unlawful non-compete provision. As such, it is void under California law. *Kolani*, 64 Cal.App.4th at 407, 75 Cal. Rptr.2d 257. The Court is not permitted to apply any narrowing construction to limit the application of the Assignment Clause to confidential information or to inventions conceived by former Applied employees during their tenure at Applied. *See id.*

### C. Substantive Claims

The Court considers whether, in light of the foregoing, summary judgment is appropriate as to each of Defendants' counterclaims.

#### 1. Declaratory Relief

In light of the Court's findings that the Assignment Clause is an unlawful non-compete provision under section 16600, the Court GRANTS Defendants' Motion for Summary Judgment with respect to Defendants' First Counterclaim for Declaratory Relief. The Assignment Clause is thus determined to be void and unenforceable.

#### 2. Unfair Competition Law

■ Unfair competition includes any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.Code § 17200. "Where the employer's policy or

practice is forbidden ... it may also be held to constitute an 'unlawful business practice' subject to redress under [§ 17200]." *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 907, 72 Cal.Rptr.2d 73 (1998). The California Court of Appeal has applied this reasoning to contractual provisions found to violate section 16600. *Id.* at 907–08, 72 Cal.Rptr.2d 73.

 Since the Court has found that the Assignment Clause is unlawful under section 16600, it follows that the Assignment Clause constitutes unfair competition under section 17200. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment with respect to Defendants' Second Counterclaim for Violation of California Business & Professions Code § 17200. Plaintiff is enjoined from enforcing the Assignment Clause of the Employment Agreements.

## V. CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment as to Defendants' First and Second Counterclaims for Declaratory Relief and Violation of California Business & Professions Code § 17200, respectively. The Assignment Clause of Plaintiff's Employment Agreements is declared invalid and unenforceable.